

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-1996

# USA v. Ketcham

Precedential or Non-Precedential:

Docket 95-5002

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation
"USA v. Ketcham" (1996). *1996 Decisions.* Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NO. 95-5002


UNITED STATES OF AMERICA
v.
BASIL KETCHAM
Appellant


On Appeal From the United States District Court
For the District of New Jersey
(D.C. Crim. Action No. 94-cr-00131-2)


Argued:  September 21, 1995

BEFORE:  BECKER and STAPLETON*, <u>Circuit Judges</u>,
         and LANCASTER,** <u>District Judge</u>

(Opinion Filed March 29, 1996)

Faith S. Hochberg
Kevin McNulty
Leslie F. Schwartz  (Argued)
Office of the U.S. Attorney
970 Broad Street
Room 502
Newark, NJ 07102
 Attorneys for Appellee

Elizabeth H. Smith  (Argued)
10 Park Place, Suite 217
Morristown, NJ 07960
 and
Rita E. Donnelly
18 Prospect Street
P.O. Box 829, Suite 5C
South Orange, NJ 07079
 Attorneys for Appellant

*  The Honorable William D. Hutchinson was a member of the
original panel to which this appeal was assigned.  He died before
the appeal was resolved, and Judge Stapleton was designated to
serve in his place.

** Honorable Gary L. Lancaster, United States District Judge for the Western District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Basil Ketcham[0] appeals his sentence.  Ketcham argues that the district court erred when it failed to group the four counts of his conviction pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3D1.2.[0]  While we agree with the district court that grouping is inappropriate in this case, we conclude that the challenged sentence cannot stand because the court's decision with respect to grouping was inconsistent with another portion of its calculation of the appropriate guideline range.  We will, accordingly, reverse the judgment and remand for resentencing.[0]

I.

---

[0]  The indictment, the presentence report, and the district court's judgment incorrectly spell the defendant's name "Ketchum."

[0]  Because Ketcham was sentenced in December 1994, we apply the 1994 version of the Guidelines.  18 U.S.C. § 3553(a)(4); U.S.S.G. § 1B1.11(a).

[0]  Ketcham also argues that: (1) the district court erred when it ordered an upward adjustment in his criminal history category from level I to level II pursuant to U.S.S.G. § 4A1.3; (2) the district court erred when it failed to order a downward adjustment pursuant to U.S.S.G. § 3B1.2 for minor or minimal participation in the offenses; (3) the government breached its plea agreement; and (4) the sentencing judge was biased.  We find these arguments to be without merit.

Ketcham pleaded guilty to transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252(a)(1) (count 3); receiving, distributing, and reproducing child pornography that had been shipped in interstate commerce in violation of 18 U.S.C. § 2252(a)(2) (counts 4 and 5); and possessing child pornography that had been shipped in interstate commerce in violation of 18 U.S.C. § 2252(a)(4)(B) (count 6). Ketcham did not plead guilty to, and denies, any involvement with the <u>production</u> of child pornography.

The plea agreement stipulated that: (1) the applicable guideline for counts 3, 4, and 5 is U.S.S.G. § 2G2.2;[0] (2) the 2

---

[0] U.S.S.G. § 2G2.2 provides in full:

<u>Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic</u>

(a)  Base Offense Level:  15

(b)  Specific Offense Characteristics

(1) If the material involved a prepubescent minor or a minor under the age of twelve years, increase by 2 levels.

(2) If the offense involved distribution, increase by the number of levels from the table in §2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels.

(3) If the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels.

(4) If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels.

level enhancement in U.S.S.G. § 2G2.2(b)(1) is appropriate; (3)

Ketcham engaged "in a pattern of activity involving the sexual

exploitation of minors for purposes of the 5 level enhancement in

U.S.S.G. § 2G2.2(b)(4);" (4) the applicable guideline for count 6

is U.S.S.G. § 2G2.4;[0] (5) the 2 level enhancements in U.S.S.G.

---

        (c)  Cross Reference

        (1) If the offense involved causing, transporting,
        permitting, or offering or seeking by notice or
        advertisement, a minor to engage in sexually
        explicit conduct for the purpose of producing a
        visual depiction of such conduct, apply §2G2.1
        (Sexually Exploiting a Minor by Production of
        Sexually Explicit Visual or Printed Material;
        Custodian Permitting Minor to Engage in Sexually
        Explicit Conduct; Advertisement for Minors to
        Engage in Production) if the resulting offense
        level is greater than that determined above.

[0]  U.S.S.G. § 2G2.4 provides in its entirety:

        Possession of Materials Depicting a Minor Engaged in
        Sexually Explicit Conduct

        (a)  Base Offense Level:  13

        (b)  Specific Offense Characteristics

        (1)  If the material involved a prepubescent minor
        or a minor under the age of twelve years, increase
        by 2 levels.

        (2)  If the offense involved possessing ten or
        more books, magazines, periodicals, films, video
        tapes, or other items, containing a visual
        depiction involving the sexual exploitation of a
        minor, increase by 2 levels.

        (c)  Cross References

        (1)  If the offense involved causing,
        transporting, permitting, or offering or seeking
        by notice or advertisement, a minor to engage in
        sexually explicit conduct for the purpose of
        producing a visual depiction of such conduct,

§ 2G2.4(b)(1) & 2G2.4(b)(2) are appropriate; and (6) the cross reference in U.S.S.G. § 2G2.2(c)(1), relating to offenses involving the <u>production</u> of child pornography, is not applicable.

First, the district court accepted the stipulations that the appropriate guideline for counts 3, 4, and 5 is U.S.S.G. § 2G2.2 and that there should be a 2 level increase under U.S.S.G. § 2G2.2(b)(1) because of the age of the children depicted in the pornographic materials. Second, the district court accepted the agreement of the parties that Ketcham's offense did not involve the production of child pornography. Third, contrary to the plea agreement, the district court concluded that U.S.S.G. § 2G2.2 is the appropriate guideline for count 6 via the cross reference in U.S.S.G. § 2G2.4(c)(2). Finally, the district court did not rely upon the stipulation to the 5 level increase under U.S.S.G. § 2G2.2(b)(4). Rather, it conducted an independent analysis and independently concluded that the enhancement was appropriate because the possession,

apply §2G2.1 (Sexually Exploiting a Minor by Production of Sexually Explicit Visual or Printed Material; Custodian Permitting Minor to Engage in Sexually Explicit Conduct; Advertisement for Minors to Engage in Production).

(2) If the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply §2G2.2 (Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic).

transportation, reproduction, and distribution alleged in counts 3, 4, 5, and 6 constituted "a pattern of activity involving the sexual abuse or exploitation of a minor" within the meaning of U.S.S.G. § 2G2.2(b)(4).[0]

The district court calculated the total offense level in the following manner.  Each count had a base offense level of 15 under U.S.S.G. § 2G2.2.  The increases provided for in U.S.S.G. § 2G2.2(b)(1) & (b)(4) raised the offense level of each count to 22.  Since the court deemed grouping under U.S.S.G. § 3D1.2 inappropriate,[0] each count generated 1 unit under U.S.S.G. § 3D1.4.[0]  Four units resulted in a 4 level increase. Adding 4 to the highest adjusted offense level of 22 resulted in

---

[0]  A sentencing court is not bound by factual stipulations in a plea agreement and has discretion to make factual findings based on other relevant information.  U.S.S.G. § 6B1.4(d).  Moreover, the plea agreement in this case provided that it did "not bind the sentencing court, which may make independent factual findings and may reject any or all of the stipulations entered into by the parties."

[0]  The relevant portion of U.S.S.G. § 3D1.2 is quoted in the text infra at page 7.

[0]  U.S.S.G. § 3D1.4 provides in relevant part:

> Determining the Combined Offense Level
>
> The combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by the amount indicated in the following table:

| Number of Units | Increase in Offense Level |
| --- | --- |
| 1 | none |
| 1-1/2 | add 1 level |
| 2 | add 2 levels |
| 2-1/2 – 3 | add 3 levels |
| 3-1/2 – 5 | add 4 levels |
| More than 5 | add 5 levels |

a combined adjusted offense level of 26.  Finally, pursuant to U.S.S.G. § 3E1.1, Ketcham was entitled to a 3 level decrease for acceptance of responsibility, producing a total offense level of 23.

## II.

Section 3D1.2 of the Guidelines provides in relevant part:

All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule:
. . .
(b)  When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
(c)  When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
(d)  . . . [I]f the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

We review de novo the district court's interpretation of U.S.S.G. § 3D1.2.  United States v. Bush, 56 F.3d 536, 537–38 (3d Cir. 1995).

## A.

Section 3D1.2(b) of the Guidelines requires the grouping of counts that involve the same victim.  The district court concluded that grouping Ketcham's offenses pursuant to

U.S.S.G. § 3D1.2(b) is inappropriate because each count involved different victims.  We agree.

The four counts of conviction resulted from Ketcham's possession, receipt, transportation, distribution, and reproduction of photographs and films pornographically depicting children.  The pictures and films in each count depicted different children.  Accordingly, Ketcham concedes that if the children depicted are the victims of his offenses, then grouping pursuant to U.S.S.G. § 3D1.2(b) is inappropriate.

Application Note 2 to U.S.S.G. § 3D1.2 explains that:

> [t]he term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim.  For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsection[] (b) is the societal interest that is harmed. . . .  Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, i.e., to identify and group "counts involving substantially the same harm."

Thus our task is to determine the primary victim that Congress had in mind when it enacted 18 U.S.C. §§ 2252(a)(1), (a)(2), and (a)(4)(B).  Only if we can find no identifiable victim will we deem the primary victim to be society.

Our review of the legislative history leads us to conclude that the primary victims that Congress had in mind when it enacted 18 U.S.C. § 2252(a) were the children depicted in

pornographic materials.[0]  The bill grew out of "a deep and abiding concern for the health and welfare of the children and youth of the United States."  S. Rep. No. 438, 95th Cong., 2d Sess. 3, reprinted in 1978 U.S.C.C.A.N. 40, 41.  The Act itself was called the Protection of Children Against Sexual Exploitation Act of 1977 ("the Act").

The Senate Report focuses on preventing the harms suffered by children depicted in pornographic films and pictures. See S. Rep. No. 438, 95th Cong., 2d Sess. 7-11, reprinted in 1978 U.S.C.C.A.N. 40, 45-48 (referring to "exploited children," "child victims," and "boy victims").  The report concluded that "the use of children as . . . the subjects of pornographic materials is very harmful to both the children and the society as a whole." Id. at 43.  While this conclusion refers to the harm to society in addition to the harm to the children depicted, it is clear from the report as a whole that the primary concern of Congress was protecting children from pornography.  This is not a statute where there is no identifiable victim.  The fact that a criminal statute in a general sense protects society as a whole cannot suffice to make society the primary victim.  Were this the case, society would be the primary victim of nearly every criminal statute.

Ketcham acknowledges that the victims of § 2251, which makes it a crime to produce pornographic material featuring

_____

[0]  The Eighth Circuit reached the same conclusion in United States v. Rugh, 968 F.2d 750, 755-56 (8th Cir. 1992).  We are not persuaded by the Fourth Circuit's contrary conclusion in United States v. Toler, 901 F.2d 399, 403 (4th Cir. 1990).

children, are the children depicted. According to Ketcham, however, the same cannot be said for § 2252 which makes it illegal to transport, distribute or possess such materials. We disagree. The victims Congress was seeking to protect with all of the criminal offenses found in the Act are the same. Section 2252, by proscribing the subsequent transportation, distribution, and possession of child pornography discourages its production by depriving would-be producers of a market. The primary objective of both § 2251 and § 2252 is thus the same -- to protect children from exploitation by producers of child pornography -- and the victims of both sections are, accordingly, the same.

Since the primary victims of offenses under 18 U.S.C. §§ 2252(a)(1), (a)(2), & (a)(4)(B) are the children depicted in the pornographic materials and because Ketcham's four counts of conviction involved materials depicting different children, the district court correctly concluded that grouping Ketcham's offenses pursuant to U.S.S.G. § 3D1.2(b) is inappropriate.

B.

Section 3D1.2(c) of the Guidelines requires grouping where "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." The district court concluded that grouping Ketcham's offenses under U.S.S.G. § 3D1.2(c) is inappropriate. We find this conclusion inconsistent with the district court's interpretation and application of U.S.S.G. § 2G2.2(b)(4).

Section 2G2.2(b)(4) of the Guidelines provides that "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." The district court determined that the possession, transportation, reproduction, and distribution alleged in counts 3, 4, 5, and 6 constituted "a pattern of activity involving the sexual abuse or exploitation of a minor" within the meaning of U.S.S.G. § 2G2.2(b)(4). Were this true, each count would embody conduct that is treated as a specific offense characteristic in the guideline applicable to each of the other counts. This would require grouping under U.S.S.G. § 3D1.2(c).

However, the district court incorrectly interpreted U.S.S.G. § 2G2.2(b)(4). The terms "sexual abuse" and "exploitation" as those terms are used in U.S.S.G. § 2G2.2(b)(4) are terms of art. "Sexual abuse" refers to the conduct covered by U.S.S.G. §§ 2A3.1, 2A3.2, 2A3.3, and 2A.3.4. "Sexual exploitation of a minor" refers to conduct covered by U.S.S.G. § 2G2.1.

Sections 2A3.1, 2A3.2, 2A3.3, and 2A.3.4 of the Guidelines set out the offense levels for the various forms of "sexual abuse" proscribed in §§ 2241 ("Aggravated sexual abuse"), 2242 ("Sexual abuse"), 2243 ("Sexual abuse of a minor or ward") and 2244 ("Abusive sexual contact") of Title 18 of the United States Code. These offenses make it criminal for anyone to engage in sexual activity with another under stipulated circumstances or to cause or permit another to engage in sexual activity under stipulated circumstances.

Section 2G2.1 of the Guidelines sets out the offense level for the various forms of "Sexually Exploiting a Minor" proscribed in subsections 2251(a) (employing, inducing, coercing or transporting, etc., a minor "with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct"), § 2251(b) (as a parent, guardian or person having custody of a minor, permitting the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction), and § 2251(c)(1)(B) (seeking or offering by advertisement participation in any act of sexually explicit conduct with a minor for the purpose of producing a visual depiction) of Title 18 of the United States Code.  These offenses make it criminal to engage in stipulated activities in connection with the <u>production</u> of materials containing visual depictions of sexually explicit conduct involving a minor.

Sections 2G2.2 and 2G2.4 of the Guidelines set forth the offense level for the various activities with such materials after they are produced that are proscribed by subsections 2251(c)(1)(A) (seeking or offering by advertisement materials for sale or exchange that contain visual depictions of sexually explicit conduct involving a minor), § 2252(a)(1-3) (transporting such depictions in interstate commerce or distributing, reproducing, selling or possessing with intent to sell such depictions that have been so transported); and § 2252(a)(4) (possessing materials containing visual depictions of explicit sexual conduct involving a minor) of Title 18 of the United States Code.

None of these Guidelines refer to the possession, transportation, trafficking, receipt, reproduction, or distribution of child pornography as "sexual abuse" or "exploitation of a minor."  Rather, the Guidelines refer to these activities as possessing, transporting, trafficking, receiving, or distributing "material involving the sexual exploitation of a minor."  U.S.S.G. § 2G2.2 (emphasis added).  Thus, a defendant who possesses, transports, reproduces, or distributes child pornography does not sexually exploit a minor even though the materials possessed, transported, reproduced, or distributed "involve" such sexual exploitation by the producer.  This distinction is important because a defendant who does nothing more than deal with child pornography after its production is penalized much less severely under the Guidelines than a defendant who engages in sexual abuse or exploits minors by directly taking part in the production of child pornography.

We find support for this distinction in the Commission's use of the word "defendant" in U.S.S.G. § 2G2.2.  Subsections 2G2.2(b)(1)-(3) of the Guidelines refer to acts concerning material involving the sexual exploitation of minors.  In contrast, U.S.S.G. § 2G2.2(b)(4) refers to the defendant's involvement in the sexual exploitation of a minor.[0]  In other words, U.S.S.G. § 2G2.2 as a whole is concerned with acts involving sexually exploitive material.  Section 2G2.2(b)(4) of the Guidelines singles out for more severe punishment those

---

[0]  U.S.S.G. §§ 2G2.2(b)(1)-(3) and (4) are quoted in footnote 4, supra.

defendants who are more dangerous because they have been involved first hand in the exploitation of children.[0]

We also find support for this view in Comment 5 to U.S.S.G. § 2G2.2.  Comment 5 explains:

> If the defendant sexually exploited or abused a minor at any time, whether or not such sexual abuse occurred during the course of the offense, an upward departure may be warranted.  In determining the extent of such a departure, the court should take into consideration the offense levels provided in §§ 2A3.1, 2A3.2, and 2A3.4 most commensurate with the defendant's conduct, as well as whether the defendant has received an enhancement under subsection (b)(4) on account of such conduct.

U.S.S.G. § 2G2.2.  This comment assumes that "the offense" covered by U.S.S.G. § 2G2.2 can occur without the defendant having sexually abused or exploited a minor.  Accordingly, cases covered by U.S.S.G. § 2G2.2 in which the defendant has sexually abused or exploited a minor may warrant an upward departure.  It necessarily follows that the conduct covered by § 2G2.2 does not itself constitute sexual abuse or exploitation of a minor.[0]

Similarly, the Commission distinguished between trafficking offenses and sexual exploitation when it added

---

[0]  The "Cross Reference" in § 2G2.2(c) performs a similar function.

[0]  We are cognizant of the fact that the title of the subpart of the Guidelines in which both §§ 2G2.1 and 2G2.2 are found is "Sexual Exploitation of a Minor."  In this context, we believe the phrase "sexual exploitation" is used as a shorthand to refer to the Guidelines sections concerning the actual sexual exploitation of minors as well as Guidelines sections concerning material that involves the sexual exploitation of minors.  As we have explained, the statutes and the text of the Guidelines can only be read to distinguish between sexual abuse of children and sexual exploitation from activities with "materials involving" such abuse or exploitation.

U.S.S.G. § 2G2.4 to the Guidelines in Amendment 372.  The

Commission explained:

> This amendment inserts an additional guideline at § 2G2.4 to address offenses involving receipt or possession of materials depicting a minor engaged in sexually explicit conduct, as distinguished from offenses involving trafficking in such material, which continue to be covered under § 2G2.2.  Offenses involving receipt or transportation of such material for the purpose of trafficking are referenced to § 2G2.2 on the basis of the underlying conduct (subsection (c)(2)).  <u>Similarly, offenses in which the underlying conduct is more appropriately addressed as sexual exploitation of a minor are referenced to that guideline (subsection (c)(1))</u>.

U.S.S.G. App. C., Amendment 372 (emphasis added).

Lastly, we note that our interpretation of U.S.S.G. § 2G2.2(b)(4) is fully consistent with the reading of that guideline by the Court of Appeals for the First Circuit in <u>United States v. Chapman</u>, 60 F.3d 894, 896–900 (1st Cir. 1995). Given our interpretation of U.S.S.G. § 2G2.2(b)(4) and the government's stipulation that the Ketcham's offense conduct did not involve the production of child pornography so as to render applicable the cross reference in U.S.S.G. § 2G2.2(c), there appears to be no basis for a U.S.S.G. § 2G2.2(b)(4) enhancement. Accordingly, on remand the district court should resentence Ketcham without the five level U.S.S.G. § 2G2.2(b)(4) increase. Since there will no longer be a U.S.S.G. § 2G2.2(b)(4) enhancement based on the conduct embodied in other counts, grouping pursuant to U.S.S.G. § 3D1.2(c) will be inappropriate.

C.

We turn finally to the third conclusion reached by the district court with respect to grouping under U.S.S.G. § 3D1.2. The district court concluded that grouping Ketcham's offenses is inappropriate under U.S.S.G. § 3D1.2(d). We agree, though for a somewhat different reason than the one advanced by the district court.

In order for grouping to be appropriate under the "ongoing or continuous" clause of U.S.S.G. § 3D1.2(d), the offense behavior must be ongoing or continuous and the offense guideline must be "written to cover" the ongoing or continuous offense behavior. It is intended to require grouping where the offense conduct is ongoing or continuous and the offense level provided by the applicable offense guideline already takes into account the fact that there has been a course of harmful conduct. See, e.g., U.S.S.G. § 2Q1.2(b)(1)(A); U.S.S.G. § 2Q1.3(b)(1)(A).

Even assuming arguendo that Ketcham's conduct was ongoing or continuous, U.S.S.G. § 2G2.2 would not take into account the ongoing nature of Ketcham's conduct. Subsection (b)(4) of § 2G2.2, the only portion of that guideline arguably directed to ongoing or continuous conduct, as we have seen, is not written to cover Ketcham's conduct, ongoing or otherwise.

III.

We will reverse the judgment of the district court and remand for resentencing consistent with this opinion.