NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1854
_____

UNITED STATES OF AMERICA,


v.

CLINTON YARD,
                              Appellant


_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim. No. 2-12-cr-00589-001)
District Judge: Honorable Michael M. Baylson
_____

Submitted under Third Circuit LAR 34.1(a)
January 24, 2014

Before: FUENTES and FISHER, <u>Circuit Judges</u>, and STARK,<sup>*</sup> <u>District Judge</u>.

(Filed: March 3, 2014)

_____

OPINION
_____


STARK, <u>District Judge</u>

---

<sup>*</sup>Honorable Leonard P. Stark, Judge of the United States District Court for the District of Delaware, sitting by designation.

Clinton Yard pled guilty to a two-count information in the Eastern District of Pennsylvania. Pursuant to Count 1, Yard was convicted of distribution of visual depictions containing child pornography, in violation of 18 U.S.C. § 2252(a)(2). The distribution offense occurred on or about July 26, 2010, when an undercover FBI agent signed onto a peer-to-peer file sharing program and downloaded 31 images of child pornography from among approximately 1,100 images Yard was offering to share. Yard was charged with distributing one of the 31 images. More than a year later, on November 10, 2011, agents executed a search warrant at Yard's residence, seized his computer, and found on it thousands of visual depictions containing child pornography, including the same images the FBI had downloaded from Yard in July 2010. (See Presentence Report ("PSR") ¶¶ 12-13) Yard was charged in Count 2 of the information with possession of a computer hard drive containing visual depictions of child pornography, on or about November 10, 2011, in violation of 18 U.S.C. § 2252(a)(4)(B). The possession count included the image that was the basis of the distribution count as well as the numerous additional images of child pornography Yard possessed at the time of the search.

On November 15, 2012, Yard entered an open plea to both counts of the information. He admitted all of the facts alleged by the government, including that he had been collecting child pornography for more than ten years, since at least the time he was 17 years old. Yard later explained that "over the years [he] had deleted his collection a number of times, only to begin collecting again after a few months." (19a) Ultimately, the government found a total of 5,800 images and 378 videos of child pornography on

2

Yard's devices, as well as more than 300 chats in which he offered to trade images. A forensic exam "confirmed that the images that the undercover agent had downloaded from the defendant on July 26, 2010 were still present on Mr. Yard's computer" in November 2011. (20a)

Yard was sentenced on March 11, 2013 to 100 months of incarceration, a sentence well below the advisory guidelines range of 151 to 188 months. On March 23, 2013, Yard timely filed an appeal. He contends that his convictions for distributing and possessing the same images violate his rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. Yard also challenges his sentence as procedurally and substantively unreasonable. We affirm.[1]

I

Yard argues that his convictions for distribution of an image of child pornography and possession of that same image of child pornography violate his rights under the Double Jeopardy Clause. "The Fifth Amendment right to be free from duplicative prosecutions and punishment is a hallmark of American jurisprudence." United States v. Jackson, 443 F.3d 293, 301 (3d Cir. 2006); see also United States v. Haddy, 134 F.3d 542, 548 n.7 (3d Cir. 1998) ("Indictments charging a single offense in different counts are multiplicitous. Multiplicity may result in multiple sentences for a single offense in violation of double jeopardy, or otherwise prejudice the defendant.").

---

[1]We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

The government asserts that Yard waived his Double Jeopardy claim by entering a guilty plea. Yard responds that there was no waiver because, as we observed in United States v. Pollen, while "an accused . . . who enters a voluntary and intelligent guilty plea may not bring a collateral Double Jeopardy challenge to the sentences subsequently imposed," there is "an exception to this rule if the defendant's claim of multiplicity can be proven by reference solely to the [charging document] and existing record." 978 F.2d 78, 84 (3d Cir. 1992) (internal citation omitted); see also United States v. Broce, 488 U.S. 563, 569 (1989) (explaining that a guilty plea generally precludes re-opening proceedings, but "[t]here are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence"). Yard insists that the Double Jeopardy violation here is evident from reference solely to the information, plea memorandum, and plea colloquy, which establish that Yard was convicted of both distributing and possessing the same image. According to Yard, we must review for plain error. See United States v. Tann, 577 F.3d 533, 535 (3d Cir. 2009); United States v. Miller, 527 F.3d 54, 60 (3d Cir. 2008); Fed. R. Crim. P. 52(b). Because we detect no plain error, and we would affirm the District Court regardless of whether Yard's challenge was waived, we will assume without deciding that there has been no waiver.

To prevail on plain error review, Yard must show that "the entry of separate convictions constitutes an (1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness,

4

integrity, or public reputation of judicial proceedings." Miller, 527 F.3d at 70 (alterations in original; internal quotation marks omitted).

It was not error for Yard to be convicted of distributing an image of child pornography in July 2010 and of possessing that same image in November 2011. These are separate crimes involving separate harms. "The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come." Osborne v. Ohio, 495 U.S. 103, 111 (1990). Yard distributed images to the undercover agent in July 2010, victimizing the children depicted in the images, and retained the same images in his own collection, where he could continue to view them (and potentially further distribute them), victimizing the depicted children still further. See United States v. Ketcham, 80 F.3d 789, 793 (3d Cir. 1996) ("Section 2252, by proscribing the . . . transportation, distribution, and possession of child pornography discourages its production by depriving would-be producers of a market. The primary objective . . . is thus . . . to protect children from exploitation by producers of child pornography . . . .").

As the Seventh Circuit explained in rejecting the identical Double Jeopardy challenge pressed here, "Congress intended to punish possession of child pornography as well as distribution, and [a defendant's] continued possession of the pornography was an independent crime subject to sanction. The fact that he happened also to distribute it [some time] earlier does not insulate him from liability for continued possession [some time] later." United States v. Faulds, 612 F.3d 566, 567, 571 (7th Cir. 2010) (affirming convictions for distribution and subsequent possession of the same images of child pornography).

Yard analogizes his situation to that presented in <u>Miller</u>, 527 F.3d at 58, in which we held that possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), is a lesser-included offense of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), so entry of judgments of conviction under both statutes, based on the same images, is plain error. <u>See also</u> <u>id.</u> at 71 ("[A]s a general matter, possession of a contraband item is a lesser-included offense of receipt of the item."). <u>Miller</u> is unhelpful to Yard. While one who knowingly receives an image necessarily also knowingly possesses that image, it does not follow that one who distributes an image always continues also to possess that image even after distributing it. Moreover, whereas possession and receipt of child pornography are "directed to similar, rather than separate, evils," <u>id.</u> at 72 (internal quotation marks omitted) – that is, the victimization of a child by a defendant's acceptance and retention into his collection of a record of that victimization – the distribution offense is directed to the separate evil of sharing that image with another individual, thereby adding to the victimization of the child by enabling another individual to possess the same image. <u>See also</u> <u>United States v. Woerner</u>, 709 F.3d 527, 539 (5th Cir. 2013) ("[P]ossession of child pornography is not the lesser-included offense of distribution of child pornography . . . .").

Yard's citation to <u>United States v. Benjamin</u>, 711 F.3d 371, 377-81 (3d Cir. 2013), in which we held that unlawful possession of a firearm by a previously-convicted felon is a "continuing offense," is likewise unavailing. "Because the felon-in-possession crime is continuing, charging and punishing a defendant twice for the same firearm requires an interruption in continuity of possession." <u>Id.</u> at 378. It may follow that it would have

6

been error to convict Yard of possessing an image in July 2010 and later continuing to possess that same image in November 2011 (absent proof that Yard had deleted the image in the interim and then came to possess it again).[2] But Yard was not convicted twice of possession of the same image. Instead, he was convicted of distributing an image and of later possessing that same image. The Double Jeopardy Clause does not protect one from prosecution for possession of child pornography simply because one has previously distributed that same image.

In any event, even were there error, it is not plain error. "An error is plain if it is 'clear' or 'obvious' under current law." Tann, 577 F.3d at 537 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)). We are unaware of any court holding that a conviction for possession of a depiction of child pornography following distribution of that same depiction is error. To the contrary, as we have already noted, the Seventh Circuit has held that there is no Double Jeopardy violation in these very circumstances. See Faulds, 612 F.3d at 567, 571 (finding no error and affirming convictions for distribution and subsequent possession of same depictions of child pornography).

In Faulds, an undercover agent had downloaded from the defendant 12 images of child pornography in July 2006, and a search executed on the defendant's computer the following month revealed that those same images remained on his computer. See id. at

---

[2]Yard admitted that he deleted his collection many times, only to reacquire images sometime later. (See PSR ¶¶ 11, 16) The government did not attempt to prove that the images for which Yard was prosecuted had been deleted and reacquired between July 2010 and November 2011.

7

567-68. Faulds was charged with distribution of a visual depiction of a minor engaged in sexually explicit conduct in July 2006, in violation of 18 U.S.C. § 2252(a)(2), and with possession of material containing a visual depiction of such a minor in August 2006, in violation of 18 U.S.C. § 2252(a)(4). See id. at 568. The Seventh Circuit identified an "obvious defect" in Faulds' Double Jeopardy challenge, specifically that "the two convictions do not rest on the same set of operative facts," as the possession charge was based on Faulds' possession of the images more than a month after he had distributed those same images. Id. at 570. As the Seventh Circuit persuasively explained: "the fact that the distribution count was based on events that transpired more than a month before the events giving rise to the possession count is fatal to Faulds' claim that he is being punished twice for the same offense. The crime of distributing the contraband material was complete when [the undercover agent] downloaded the twelve images and movie containing child pornography from Faulds' server on July 16. The fact that he continued to possess those and other images thereafter constitutes a separate crime." Id. at 570.

We will affirm Yard's convictions.

## II

Yard contends that his sentence of 100 months of incarceration is unreasonable. We review imposition of sentence for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Negroni, 638 F.3d 434, 443 (3d Cir. 2011). For a sentence to be procedurally reasonable, the "record must show a true, considered exercise of discretion," including "recognition of, and response to, the parties' non-frivolous arguments." United States v. Olhovsky, 562 F.3d 530, 546 (3d Cir. 2009). A sentence is

8

substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Negroni, 638 F.3d at 443 (internal quotation marks omitted).  Yard has the burden of demonstrating that his sentence is unreasonable.  See United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

A

Yard asserts his sentence was procedurally unreasonable.  He argues that the District Court failed to give meaningful consideration to the unrebutted opinion of his treating psychologist, Mary Jane Carlin, Ph. D., that childhood sexual abuse led to Yard's addiction to child pornography, and his prognosis for overcoming his addiction with the help of therapy was good, resulting in a minimal risk of recidivism.  More generally, Yard alleges that the record fails to show due consideration was given to his history and circumstances.

A District Court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."  Gall, 552 U.S. at 50; see also Negroni, 638 F.3d at 445.  "[S]entencing courts need not discuss each of the [18 U.S.C.] § 3553(a) factors 'if the record makes clear the court took the factors into account in sentencing.'"  Olhovsky, 562 F.3d at 547 (quoting United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)).  What "is essential" is that "district courts provide courts of appeals with an explanation sufficient for [them] to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a)."  Tomko, 562 F.3d at 567 (internal quotation marks omitted).

9

The District Court complied with these requirements. Although there is some uncertainty as to whether the District Court had and reviewed Dr. Carlin's report,[4] there is no doubt that the substance of her opinion was before the District Court and was meaningfully considered. The Presentence Report repeatedly referenced Yard's history of molestation, as well as his recent participation in therapy. (See PSR ¶¶ 17, 19, 50-53, 61-66, 68, 96 ("Mr. Yard has participated in therapy since he was implicated by federal authorities."); see also 52a (government sentencing memorandum making same point)) During the sentencing hearing, Yard spoke to the Court about his history of being molested. (99-100a) The District Court expressly stated that it understood Yard had "been under therapy for a number of years" (91a), a fact that was reiterated by Yard (102a) and defense counsel (95a). The PSR also related Dr. Carlin's positive prognosis, stating: "Dr. Carlin emphasized the defendant has made great strides in his recovery and treatment; however, he continues to struggle with trusting others for fear of being hurt again. She is encouraged by the progress the defendant has made and points out Mr. Yard is motivated toward treatment and is disturbed by his past conduct." (PSR ¶ 64)

---

[4]During the sentencing hearing, defense counsel said he assumed that the Court had a copy of the therapist's report, to which the District Judge responded, "I'm not sure I do," asking counsel to hand up a copy. (92-93a) After counsel said that he had given a copy to the Court staff and thought it might also have been included in the PSR, the Judge stated, "Yes. All right. I have it." (93a) Although we believe the record demonstrates that the District Judge received and meaningfully reviewed Dr. Carlin's report, our conclusions as to the procedural reasonableness of the sentence are unaffected by any lack of clarity on this point.

10

Yard contends the PSR "misstate[s] a critical part" of Dr. Carlin's report by omitting "the psychologist's opinion that Mr. Yard's interest in child pornography was an addiction, and that the condition was treatable, with a good prognosis." (Reply Br. at 9) We disagree. While we have found no reference outside of Dr. Carlin's report to Yard's condition as an "addiction," this is not a material omission given the totality of evidence before the District Court (even assuming the District Court did not review Dr. Carlin's report).

Yard's reliance on Olhovsky, 562 F.3d at 550, in which we found procedural unreasonableness in a District Court's refusal to allow testimony from a psychologist who was treating a defendant being sentenced for possession of child pornography, is unpersuasive. Here, the District Court did not refuse to hear any of Yard's evidence. Instead, Yard presented testimony from all six witnesses he sought to call – two friends, an aunt, a sibling, and his parents – each of whom offered a positive evaluation of Yard's character, and made a record of arguably mitigating factors, such as the sexual abuse Yard had suffered as a child. (See also PSR ¶¶ 54, 57 (noting Yard's strongly supportive family)) Yard himself also spoke directly to the Court during the sentencing hearing.

After reviewing the evidence and hearing argument, the District Court explained the reasoning for its sentence. (See 105-08a) The Court correctly calculated the advisory guidelines range as 151 to 188 months, with a statutory mandatory minimum of 60 months incarceration. (106a) The Court discussed the mandatory minimum, and understood Yard asked for a sentence of 60 months, but rejected that request for reasons including that it would appear "as if I'm just going to the minimum that Congress has

11

demanded here rather than taking in the other sentencing factors. As I said, deterrence is one. Punishment is another." (106-07a) The District Court emphasized that the "primary sentencing factor in my view in this case is deterrence," and the need to make "clear that individuals who commit these crimes will go to jail for a significant period of time." (106a)

The District Court also noted the "gravity of the situation for the defendant," pointing out that "Congress has been very strong that possession and distribution of child pornography [are] very serious crime[s]." (104a) It observed that the children who are being depicted are victims. (105a; see also 107a ("[I]t's a cancer upon society that people would want to possess or trade these pictures of depravity and of molestation and things like that."))

Turning to Yard's specific characteristics, the Court stated: "this case is particularly aggravated because of the quantity of the depictions possessed by the defendant and also by the fact that he not just possessed this, but that he traded and distributed child pornography with other people." (105a; see also 108a ("[A]nother aggravating factor here is the volume of the depictions, which is a very serious aggravating factor.")) The District Court explicitly addressed the "defendant's background," which included being a victim of molestation (a fact that received much attention during the parties' presentations), and concluded, "I cannot excuse anything in the defendant's background as having any weight with me in terms of what sentence I should impose in this case." (107a; see also 108a ("I just can't excuse what the defendant said happened to him or what his thoughts were or what his challenges were . . . .")) The

12

Court did find a mitigating factor in Yard's age, noting he was only 27 years old and "has a future." (107a) The Court added that Yard was "not atypical" of child pornography defendants in that he had no prior record, a good education, and a family ignorant of his crimes. (105-06a)

The Court concluded by varying downward from the bottom of the guidelines, from 151 to just 100 months incarceration, "in part . . . because the defendant has a very strong and supportive family" and for other reasons argued at the hearing. (107-08a)

Plainly, the record shows that the District Court gave "meaningful consideration" to all of the sentencing factors in § 3553(a), and further shows "a true, considered exercise of discretion . . ., including a recognition of, and response to, the parties' non-frivolous arguments." United States v. Jackson, 467 F.3d 834, 841 (3d Cir. 2006). Thus, Yard has failed to demonstrate that his sentencing was procedurally unreasonable.

B

We must affirm a reasonable sentence even if it is not the sentence we would impose if we were the sentencing court. See Gall, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify a reversal of the district court."); Olhovsky, 562 F.3d at 550 ("The issue is not whether we would have imposed the same sentence, or even a similar sentence. Rather, the issue is whether the sentence is unreasonable in light of this record and the sentencing factors.").

The reasons provided by the District Court, which we have summarized already, demonstrate that Yard's sentence of 100 months imprisonment is not unreasonable. The

13

sentence represented a sizeable downward variance from the guidelines range of 151-188 months. It reflected the District Court's assessment of the large size of Yard's child pornography collection and his long history of possession of this unlawful material, which made him a participant in the victimization of countless children. See United States v. Goff, 501 F.3d 250, 260 (3d Cir. 2007) ("[T]he consumer of child pornography creates a market for the abuse by providing an economic motive for creating and distributing the materials.") (internal quotation marks omitted). It was within the District Court's discretion to give the weight it did to Yard's youth, history of being sexually abused, therapeutic efforts to overcome his addiction to child pornography, education and work history, and lack of prior criminal record, as well as its view of the importance that Yard's sentence reflect the need for deterrence and punishment. The District Court also placed reasonable weight on the statutory mandatory minimum of 60 months and Yard's request for that sentence.

In short, Yard has failed to show that his sentence was substantively unreasonable.

III

For the foregoing reasons, we will affirm Yard's conviction and sentence.

14