# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 30, 2024

Lyle W. Cayce
Clerk

No. 23-11135

United States of America,

*Plaintiff—Appellee*,

*versus*

Lorenzo Vazquez-Alba,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CR-356-1

Before Elrod, *Chief Judge*, and Higginbotham and Southwick, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

Lorenzo Vazquez-Alba pleaded guilty to unlawful reentry after removal, in violation of 8 U.S.C. § 1326(a) and (b)(2), and failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). He now appeals his conviction and sentence. Because the district court did not err, we AFFIRM.

No. 23-11135

I

Lorenzo Vazquez-Alba is a Mexican citizen who lawfully entered the United States in 1986 and became a legal permanent resident the following year.

In 2008, Vazquez-Alba was arrested in Dallas, Texas, after a juvenile accused him of using her as a paid prostitute. According to the victim, Vazquez-Alba had sexual intercourse with her at least twice and supplied her with marijuana and cocaine. Vazquez-Alba pleaded guilty in Texas state court to aggravated assault causing seriously bodily injury for this offense, and was placed in a diversionary program and sentenced to five years of community supervision (*i.e.*, probation).

Also in 2008, Vazquez-Alba's wife accused him of having sexual intercourse with a close family member. The family member alleged that Vazquez-Alba would "make her have sexual intercourse with the defendant since she was 5 years old." Following an investigation and state criminal charges, Vazquez-Alba pleaded guilty in 2011 to aggravated sexual assault of a child under the age of 14 for these allegations.

Later in 2011, a Texas state court revoked Vazquez-Alba's probation for the 2008 offense and sentenced him to concurrent terms of eight years' imprisonment for each of the 2008 and 2011 crimes. Vazquez-Alba subsequently lost his permanent resident status while serving his sentence and was deported to Mexico in 2017.

Sometime later, Vazquez-Alba unlawfully reentered the United States. In August 2022, police officers at the Methodist Hospital in Dallas, Texas, arrested him for driving a stolen vehicle.[1] The officers discovered that

---

[1] According to Vazquez-Alba's presentence investigation report, there are no allegations that Vazquez-Alba stole the vehicle. Rather, a customer at Vazquez-Alba's tire-

Vazquez-Alba had an expired driver's license and an immigration hold, and that he had failed to register as a sex offender as he was required to do following his 2011 conviction.

Vazquez-Alba was later indicted in federal court for: (1) illegal reentry after removal in violation of 8 U.S.C. § 1326(a) and (b)(2) and (2) failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). Vazquez-Alba pleaded guilty to both counts without a written plea agreement. For his illegal reentry count, Vazquez-Alba faced a 20-year statutory maximum under 8 U.S.C. § 1326(b)(2), which applies where the defendant reentered the United States after removal following an "aggravated felony."

Before sentencing, probation officers prepared Vazquez-Alba's presentence investigation report, or "PSR." The PSR declined to group the illegal-reentry and failure-to-register counts under U.S.S.G. § 3D1.2 because they did not involve substantially the same harm. The PSR then calculated an adjusted Guidelines offense level of 18 for the illegal-reentry offense and an adjusted Guidelines offense of 14 for the failure-to-register offense. After applying the multi-count adjustment, grouping rules, and a three-level reduction for acceptance of responsibility, Vazquez-Alba's total offense level was 17. The PSR assigned three criminal history points to each of Vazquez-Alba's two prior Texas convictions, which resulted in a criminal history score of six and a criminal history category of III. These calculations produced an advisory guideline range of 30 to 37 months' imprisonment.

Vazquez-Alba made two objections to the PSR. He first argued that the indictment was flawed because it did not allege a prior aggravated felony.

---

repair shop gave it to him to pay an outstanding debt. License-plate readers at the hospital alerted local police officers that the car had been reported stolen after Vazquez-Alba parked there.

He acknowledged that his argument was foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and that he raised it only to seek further review.  He also objected to the PSR's grouping determination, arguing that the illegal-reentry and failure-to-register counts should be grouped together under U.S.S.G. § 3D1.2.

At sentencing, the district court overruled Vazquez-Alba's objections and sentenced him to an above-Guidelines sentence of 45 months' imprisonment.

Vazquez-Alba timely appealed.

## II

On appeal, Vazquez-Alba argues that the district court erred in entering judgment for his illegal-reentry count under 8 U.S.C. § 1326(b)(2) for two reasons.  First, he contends that the indictment failed to plead his aggravated offense.  As he did before the district court, he acknowledges that this argument is foreclosed.  *See Almendarez-Torres*, 523 U.S. at 226–27; *United States v. Garza-De La Cruz*, 16 F.4th 1213, 1213 (5th Cir. 2021).  Second, he argues that his 2011 conviction for aggravated sexual assault of a child under 14 is not an "aggravated felony" for purposes of § 1326(b)(2), which would mean that the 20-year statutory maximum does not apply.

Vazquez-Alba also appeals his sentence, again raising two arguments.  First, he contends that his reentry and failure to register are "closely related" under U.S.S.G. § 3D1.2 and thus should have been grouped.  Second, he argues that his two state court convictions should be treated as a "single sentence" under U.S.S.G. § 4A1.2(a)(2).

## A

We first address Vazquez-Alba's argument that his 2011 conviction is not an aggravated felony.  He concedes that he did not raise this argument

below, and thus it is reviewed for plain error. On plain-error review, Vazquez-Alba must show that "the district court (1) committed an error, (2) that is plain, and (3) that affects [his] substantial rights." *United States v. Parra*, 111 F.4th 651, 656 (5th Cir. 2024) (citations and internal quotation marks omitted). If he does so, we may exercise our "discretion to correct the error only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

Generally, an alien who has been previously removed faces a 2-year statutory maximum for the crime of unlawful reentry. 8 U.S.C. § 1326(a). However, an alien "whose removal was subsequent to a conviction for commission of an aggravated felony" faces a 20-year statutory maximum. *Id.* § 1326(b)(2). The term "aggravated felony" is defined to include, *inter alia*, "sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A).

The parties agree that Vazquez-Alba's 2008 crime for aggravated assault does not qualify as an aggravated felony.[2] So, we must determine whether Vazquez-Alba's 2011 conviction for aggravated sexual assault of his close family member constitutes the aggravated felony of "sexual abuse of a minor."

We employ the "categorical approach" to answer that question. *Shroff v. Sessions*, 890 F.3d 542, 544 (5th Cir. 2018). Under the categorical approach, courts "focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic [sexual abuse of a

---

[2] The district court did not specify whether it applied the penalty provision found in § 1326(b)(2) because of the 2008 aggravated assault, the 2011 aggravated sexual assault of a child under 14, or both. Vazquez-Alba correctly argues, and the government does not dispute, that his 2008 aggravated assault does not constitute an "aggravated felony" for purposes of § 1326(b)(2) under this court's precedent. *See United States v. Gomez Gomez*, 23 F.4th 575, 577–78 (5th Cir. 2022) (determining that Texas aggravated assault does not qualify as an aggravated felony for convictions under § 1326(b)(2)).

minor], while ignoring the particular facts of the case." *Mathis v. United States*, 579 U.S. 500, 504 (2016). If the state statute of conviction "covers any more conduct than the generic offense," the state statute is not a categorical match, "even if the defendant's actual conduct . . . fits within the generic offense's boundaries." *Id.*

The generic definition of "sexual abuse of a minor" is conduct that (1) involves a child, (2) is sexual in nature, and (3) is abusive. *Shroff*, 890 F.3d at 544. The Supreme Court has defined the generic meaning of "minor" as requiring "that the victim be younger than 16."[3] *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 390–91, 396–97 (2017). Further, the Fifth Circuit has adopted a "per se rule that gratifying or arousing one's sexual desires in the presence of a child is abusive because it involves taking undue or unfair advantage of the minor." *Contreras v. Holder*, 754 F.3d 286, 294–95 (5th Cir. 2014) (citations omitted).

Here, the relevant Texas criminal statute, Texas Penal Code § 22.021(a)(1)(B)(i) & (2)(B), prohibits (1) intentionally or knowingly "caus[ing] the penetration of the anus or sexual organ of a child by any means" when (2) "the victim is younger than 14 years of age." The 14-year age requirement falls within *Esquivel-Quintana*'s definition of a "minor." Further, the statute of conviction meets the requirements of the generic definition because Vazquez-Alba's crime is inherently sexual and involves the gratification of sexual desires in the presence of a child. *See, e.g.*, *Contreras*, 754 F.3d at 294–95 (holding that a state statute criminalizing

---

[3] In *Esquivel-Quintana*, the Supreme Court stated that the age of consent may be different under statutes criminalizing sexual intercourse with a minor by someone who occupies a special relationship of trust. 581 U.S. at 396–97. Although Vazquez-Alba undoubtedly maintained a special relationship of trust with his family member, his statute of conviction does not rely upon that relationship, and thus the 16-year age of consent applies here.

carnal knowledge of a child constitutes "sexual abuse of a minor"); *United States v. Rivas*, 836 F.3d 514, 515 (5th Cir. 2016) (same for state statute prohibiting "sexual conduct" when victim is between thirteen and sixteen years of age).

Vazquez-Alba, however, contends that the Texas statute is not a categorical match to the generic sexual abuse of a minor because the generic offense requires an "age differential" between the victim and the perpetrator, and the Texas offense does not. He cites several national surveys of state criminal statutes, which reveal that many states require that the victim be younger than the defendant by some statutorily prescribed number of years. *See, e.g.*, La. Rev. Stat. § 14:80 (criminalizing "carnal knowledge of a juvenile" when the victim is between 13 and 17 years of age and the defendant is at least four years older than the victim).

But in *United States v. Rodriguez*, we unequivocally stated that the generic offense does not contain an age differential "because the definitions of 'sexual abuse of a minor' in legal and other well-accepted dictionaries do not include such an age-differential requirement."[4] 711 F.3d 541, 562 n.28 (5th Cir. 2013) (en banc). Although the Supreme Court later abrogated one of *Rodriguez*'s holdings, it declined to reach the age-differential question. *Esquivel-Quintana*, 581 U.S. at 397 ("We leave for another day whether the generic offense requires a particular age differential between the victim and

---

[4] Vazquez-Alba suggests that, although *Rodriguez* rejected a four-year age differential in the generic offense, it left open the possibility for other, shorter age differentials. True, the defendant in *Rodriguez* argued that the generic offense contained a four-year age differential. 711 F.3d at 562 n.28. But in rejecting that argument, we explained that the generic offense does not contain *any* age differential because "legal and other well-accepted dictionaries" do not include them. *Id.*; *see also United States v. Escalante*, 933 F.3d 395, 404–05 (5th Cir. 2019) (explaining that the "generic crime of 'sexual abuse of a minor' does not require an age differential"). This argument therefore fails.

the perpetrator . . . .”).  Indeed, after *Esquivel-Quintana*, we explained that the Supreme Court “did not abrogate *Rodriguez*’s holding that the generic crime of ‘sexual abuse of a minor’ does not require an age differential.  That holding remains the law of this circuit.”  *United States v. Escalante*, 933 F.3d 395, 404–05 & n.13 (5th Cir. 2019); *see also United States v. Montanez-Trejo*, 708 F. App’x 161, 170–71 (5th Cir. 2017) (finding no plain error post-*Esquivel-Quintana* because the Supreme Court declined to decide the age-differential question); *United States v. Hernandez-Vasquez*, 699 F. App’x 404, 405 (5th Cir. 2017) (same).  Accordingly, Vazquez-Alba’s age-differential argument fails.

Because Vazquez-Alba’s statute of conviction matches the generic definition of “sexual abuse of a minor,” the district court properly entered judgment under 8 U.S.C. § 1326(b)(2) and applied that statute’s 20-year statutory maximum.  He therefore cannot show any error, much less plain error, in his conviction.  Further, as he concedes, his remaining argument on the validity of his indictment is foreclosed.  *See Almendarez-Torres*, 523 U.S. at 226–27.  Accordingly, the district court did not err in applying the 20-year statutory maximum found in 8 U.S.C. § 1326(b)(2).

B

Vazquez-Alba also contends that the district court should have grouped together his unlawful-reentry and failure-to-register counts because they involve “closely related” conduct under U.S.S.G. § 3D1.2.  Both parties agree that Vazquez-Alba properly preserved this argument.  Accordingly, we review the district court’s grouping determination *de novo*.  *United States v. Garcia-Figueroa*, 753 F.3d 179, 190 (5th Cir. 2014).

When a defendant is convicted of multiple counts, the sentencing court must follow prescribed rules in the Guidelines to ascertain the appropriate offense level.  First, the court determines whether the counts

may be grouped. U.S.S.G. § 3D1.2. If counts are grouped, the court then determines the applicable offense level for the group(s). *Id.* §§ 3D1.3, 4.

Under § 3D1.2, counts shall be grouped if they involve "substantially the same harm," which is defined in four separate subsections *Id.* § 3D1.2. Vazquez-Alba argues that his two counts should be grouped under subsections (a), (b), and (d).

Subsections (a) and (b) are similar, and allow for grouping:

(a) When counts involve the same victim and the same act or transaction.
(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

*Id.* When there is not an identifiable "victim" for purposes of these subsections, "the 'victim' . . . is the societal interest that is harmed." *Id.* cmt. n.2. If the societal interests are "closely related," the counts may be grouped.[5]

Vazquez-Alba contends that the crimes to which he pleaded guilty serve the same societal interests: "identifying and excluding aliens convicted of felony sex offenses and punishing those who evade detection."

We have previously explained, however, that the societal interest of illegal reentry statutes is to "enforce[] immigration laws." *United States v. McLauling*, 753 F.3d 557, 559 (5th Cir. 2014). The same cannot be said of

---

[5] Application Note 2 provides two examples. The crimes of unlawfully entering the United States and possession of fraudulent evidence of citizenship should be grouped because they serve similar societal interests: "the interests protected by laws governing immigration." U.S.S.G. § 3D1.2 cmt. n.2. By contrast, the sale of controlled substances and immigration offenses "are not grouped together because different societal interests are harmed." *Id.*

Vazquez-Alba's failure-to-register count. Congress passed the Sex Offender Registration and Notification Act, which established the sex-offender registration regime, in order "to protect the public from sex offenders and offenders against children." *See* 34 U.S.C. § 20901. Because the crimes to which Vazquez-Alba pleaded guilty serve distinct societal interests, the district court did not err in declining to group them under subsections (a) and (b). *See McLauling*, 753 F.3d at 559; *United States v. Yerena-Magana*, 478 F.3d 683, 689 (5th Cir. 2007) (concluding that drug offenses and illegal-reentry offenses served different societal interests).

Further, the district court did not err in declining to group under subsection (d). Subsection (d) permits grouping:

> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(d). Subsection (d) also specifically enumerates several Guidelines provisions that are "to be grouped," which we have interpreted to mean that these provisions are "susceptible to grouping" with other provisions if the requirements of the subsection are met. *United States v. Goncalves*, 613 F.3d 601, 605–06 (5th Cir. 2010) (citation omitted). Subsection (d) also lists several provisions that are specifically excluded from grouping. U.S.S.G. § 3D1.2(d). Provisions not enumerated in either list may or may not be grouped following a "case-by-case determination." *Id.*

Subsection (d) lists § 2A3.5, which applies to Vazquez-Alba's failure-to-register count, in the "to be grouped" list. *Id.* Because § 2L1.2, which applies to his illegal-reentry count, is not listed in either list, we must determine whether it otherwise qualifies for grouping with § 2A3.5.

Application Note 6 of § 3D1.2 explains that subsection (d) allows for grouping of multiple offenses if they "are of the same general type and otherwise meet the criteria for grouping under this subsection." U.S.S.G. § 3D1.2 cmt. n.6. "The 'same general type' of offense is to be construed broadly." *Id.* Vazquez-Alba contends that his offenses are of the "same general type" because they are both "continuing crimes based on status and concealment."

While doubtful of his categorization, we need not decide whether these offenses are of the same general type because Vazquez-Alba fails to explain how § 2L1.2 meets subsection (d)'s grouping criteria. For example, he does not argue that § 2L1.2 determines base offense levels by examining aggregate harm. *See id.* § 3D1.2(d) (allowing for grouping if offense levels are based on a "measure of aggregate harm").

Nor does he explain how "the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." *Id.* He suggests that both crimes are "continuing," but that is insufficient. Rather, the relevant Guidelines provision must be "written" to cover the continuing conduct. *See United States v. Solis*, 299 F.3d 420, 461 (5th Cir. 2002); *see also United States v. Ketcham*, 80 F.3d 789, 796 (3d Cir. 1996) (explaining that subsection (d) applies when the applicable Guidelines provision accounts for a "course of harmful conduct"). For example, § 2Q1.2(b)(1)(A) ("Mishandling of Hazardous or Toxic Substances") is written to cover continuing conduct because it allows for additional offense levels if the offense was "ongoing, continuous, or repetitive." *See Ketcham*, 80 F.3d at 796.

The same cannot be said of § 2L1.2. Under that provision, a defendant's offense level is established the moment that he unlawfully reenters the United States because the offense level is based solely on his pre-

removal conduct. *Id.* § 2L1.2(b). The Guideline does not allow for additional offense levels based on any "ongoing, continuous, or repetitive" conduct, or any conduct that occurs after reentry. *Compare* U.S.S.G. § 2L1.2(b), *with* § 2Q1.2(b)(1)(A). Accordingly, § 2L1.2 does not qualify for grouping under subsection (d). *See United States v. Jimenez-Cardenas*, 684 F.3d 1237, 1241 (11th Cir. 2012) (holding that § 2L1.2 "does not fall within the purview of, or list of covered offenses in, § 3D1.2(d)").

Vazquez-Alba has not shown that each of his two counts are eligible for grouping under § 3D1.2. Thus, the district court correctly declined to group them.

## C

Finally, Vazquez-Alba maintains that the sentences for his 2008 and 2011 convictions should be treated as a "single sentence" under U.S.S.G. § 4A1.2(a)(2) because he was sentenced for them simultaneously. If treated as a single sentence, his convictions would qualify Vazquez-Alba for criminal history category II, rather than III, lowering his advisory Guidelines range. Vazquez-Alba concedes that, because he did not raise this issue in the district court, it is reviewed for plain error.

The Guidelines require that when a defendant has "multiple prior sentences," the court must "determine whether those sentences are counted separately or treated as a single sentence." U.S.S.G. § 4A1.2(a)(2). Relevant here, sentences should be treated separately unless "the sentences were imposed on the same day." *Id.*

Vazquez-Alba argues the sentences for his two convictions constitute a single sentence because the Texas state court imposed concurrent 8-year sentences, one for each conviction, on the same day at a consolidated hearing in 2011. We disagree.

For § 4A1.2 purposes, Vazquez-Alba was sentenced for his 2008 aggravated assault conviction in 2008, not 2011, when he pleaded guilty and was placed on five years of probation under a diversionary program. U.S.S.G. § 4A1.2(f) ("A diversionary disposition resulting from a finding or admission of guilt . . . is counted as a sentence under § 4A1.1(c) even if a conviction is not formally entered . . . ."). It is of no moment that a state court later revoked his probation for the 2008 crime, sentenced him again for that crime, and also sentenced him for the 2011 crime, all on the same day in 2011. *See United States v. Castro-Perpia*, 932 F.2d 364, 365–66 (5th Cir. 1991) (treating sentence imposed pursuant to revocation and sentence imposed for new criminal conduct as separate sentences, even though they ran concurrently and were imposed at the same time); *United States v. Lopez-Gonzalez*, 275 F. App'x 297, 297–98 (5th Cir. 2008).

Vazquez-Alba cannot show that the district court erred in failing to treat his sentences as a single sentence under U.S.S.G. § 4A1.2(a)(2). He therefore fails on prong one of plain-error review. *See Parra*, 111 F.4th at 656.

\* \* \*

Because Vazquez-Alba's 2011 conviction is a categorical match to the generic offense of "sexual abuse of a minor" and because his remaining argument is foreclosed, the district court did not err in applying the 20-year statutory maximum found in 8 U.S.C. § 1326(b)(2). Further, the district court did not err in sentencing Vazquez-Alba because his two federal counts are not eligible for grouping and his two state-court sentences are properly treated separately under the Guidelines.

Accordingly, we AFFIRM.