**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3109
_____

UNITED STATES OF AMERICA

v.

MORDCHAI FISH,
a/k/a Martin Fisch,
a/k/a Mordechai Fisch,

MORDCHAI FISH,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-11-cr-00210-001)
District Judge:  Honorable Joel A. Pisano

_____

Argued on May 15, 2013

Before:  SLOVITER, FUENTES and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 01, 2013)

1

Harvey Weissbard, Esquire (**Argued**)
Genova Burns Giantomasi & Webster
494 Broad Street, 6th Floor
Newark, NJ 07102

        Counsel for Appellant

Mark E. Coyne, Esquire
David W. Feder, Esquire (**Argued**)
Caroline A. Sadlowski, Esquire
Office of United States Attorney
970 Broad Street
Newark, NJ 07102

        Counsel for Appellee

---

O P I N I ON

---

**ROTH**, <u>Circuit Judge</u>:

Mordchai Fish appeals the District Court's July 5, 2012, judgment of sentence. He argues that the District Court erred by imposing a two-level enhancement for sophisticated money laundering under U.S.S.G. § 2S1.1(b)(3). For the reasons that follow, we will affirm the judgment of sentence.

## I.    Background

Fish, a rabbi in Brooklyn, New York, was a target of a

large investigation into public corruption and money laundering in Brooklyn and New Jersey. The investigation began when Solomon Dwek, a cooperating witness who was charged with bank fraud in 2006, informed law enforcement that several rabbis, including Fish, were laundering money through tax-exempt Jewish charities known as "gemachs."

Dwek, under law enforcement supervision, approached Fish about laundering what Dwek claimed were the proceeds of illegal endeavors, namely a bank fraud scheme and an operation that produced and sold counterfeit handbags. The "proceeds" were in fact funds provided by the government. Between May 2008 and July 2009, Fish participated in approximately twelve money laundering transactions involving over $900,000. To execute these transactions, Dwek would deliver to Fish bank checks made out to gemachs and rabbis, and Dwek would receive cash in exchange, less a commission (usually 10% of the check value). These check-for-cash exchanges took place at various locations, including a residence, a pizzeria, a bakery, a grocery store, a mikva (ceremonial bath house), and an office where Fish's contacts had a safe, cash-counting machines, and checks and currencies from different countries. The exchanges were at times scheduled only hours in advance and often involved numerous couriers.

Fish made efforts to conceal the money laundering operations by giving Dwek SIM cards for his cell phone.[1] He warned Dwek to sweep his car and phones for detection devices and to use code when speaking to associates about

---

[1] A cell phone user can change the number on a cell phone by inserting a new SIM card.

transactions. In recordings made by Dwek, Fish stated that he had a number of money laundering connections, could launder money through several different rabbis, knew how much cash certain individuals had available at specified times, and had met with the "main guy" running one of the networks. Fish and another participant in the scheme, Levi Deutsch, said that the cash came from the diamond and jewelry business, and Deutsch indicated that the operation extended to Israel and Switzerland.[2]

On April 8, 2011, pursuant to a plea agreement, Fish pled guilty to a one-count Information charging him with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The parties agreed that the total offense level applicable to Fish under the U.S. Sentencing Guidelines would be at least 21. The government reserved the right to argue for a two-level enhancement under U.S.S.G. § 2S1.1(b)(3) for sophisticated money laundering, and Fish reserved the right to argue against this enhancement.

In the presentence report, the Probation Department recommended that Fish should receive the two-level enhancement under U.S.S.G. § 2S1.1(b)(3) and calculated a total offense level of 23. At sentencing on July 3, 2012, the District Court reviewed the sentencing submissions, including a video of meetings between Fish, Dwek, and others, and applied the two-level enhancement under U.S.S.G. § 2S1.1(b)(3). The offense level of 23 resulted in an advisory

---

[2] Fish objected to specific paragraphs in the presentence report that mentioned his references to "Israel." He claimed that these references were to a person named "Israel" and not to the country.

Guidelines range of 46 to 57 months, and the District Court sentenced Fish to 46 months imprisonment. This appeal followed.

## II.   Discussion[3]

### A.   Standard of Review

The parties disagree regarding the appropriate standard of review: Fish urges us to exercise plenary review over the District Court's application of U.S.S.G. § 2S1.1(b)(3) while the government asserts that we should review for clear error. Only two courts of appeals have articulated a standard of review for a district court's application of U.S.S.G. § 2S1.1(b)(3): the Eighth Circuit reviews the application of U.S.S.G. 2S1.1(b)(3) *de novo*, *United States v. Pizano*, 421 F.3d 707, 732 (8th Cir. 2005), and the Fifth Circuit reviews for clear error, *United States v. Miles*, 360 F.3d 472, 481 (5th Cir. 2004).

This is an issue of first impression in this Court. While we have not addressed this precise question, we find instructive how we have reviewed challenges to a district court's application of the Guidelines in other contexts. In cases, like this one, in which there is no dispute over the factual determinations but the issue is whether the agreed-upon set of facts fit within the enhancement requirements, we have reviewed for clear error the district court's applications of those facts to the Guidelines. *See, e.g., United States v.*

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

5

*Richards*, 674 F.3d 215, 223 (3d Cir. 2012). We will adopt that same standard here in reviewing the application of the undisputed facts to the requirements for the enhancement for sophisticated money laundering.

**B.      Application of Enhancement**

Fish argues that the District Court erred by imposing the two-level enhancement for sophisticated money laundering under U.S.S.G. § 2S1.1(b)(3). This section provides, "[i]f . . . the offense involved sophisticated money laundering, increase by 2 levels." U.S.S.G. § 2S1.1(b)(3). Application Note 5 further explains:

> For purposes of subsection (b)(3), 'sophisticated laundering' means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. 1956 offense.
>
> Sophisticated laundering typically involves the use of
> (i) fictitious entities;
> (ii) shell corporations;
> (iii) two or more levels (i.e., layering) of transactions, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or
> (iv) offshore financial accounts.

U.S.S.G. § 2S1.1(b)(3), App. Note 5.

Fish argues that the District Court erred in concluding that he engaged in sophisticated money laundering for

6

purposes of U.S.S.G. § 2S1.1(b)(3) because his conduct was not "complex or intricate" and involved none of the factors of sophisticated money laundering listed in the Application Note 5. We agree that the determinative factors of sophistication in this case are not any the five factors listed in Application Note 5. We disagree, however, that a finding of the existence of those listed facts is necessary to a determination that a particular scheme to launder money was sophisticated.

The District Court imposed the two-level enhancement after noting that it "[did] not feel constrained to find the factors in the guidelines to be exhaustively shown." We agree with that conclusion. The factors listed in Application Note 5 are illustrative but not required; they are typical but non-exhaustive. When the modus operandi of a money laundering scheme is not made up of the Application Note 5 factors, the district court must establish the relevant facts concerning the operation of the scheme and then determine from a review of those facts whether the scheme is complex or intricate.

In making this determination, the District Court made the following factual findings:

> This was a long-running scheme, . . . [,] it became difficult to uncover because it used multiple outlets for cash exchanges, used multiple couriers, multiple locations for the transactions[,] [t]here was an effort made by the perpetrators to keep even from Dwek some of the knowledge of the underlying aspects of the case . . . [,] there was an effort made to evade detection because there [was] the use of codes

and there [were] electronic devices which had been changed and moved around, changing SIM cards, et cetera, and we also know that the incoming cash necessarily originated from numerous other accounts or sources.

The District Court reviewed the "entire scenario involving other conspirators and other perpetrators and the fact that Fish was able to conduct these transactions over a long-running period with such facility, with so many different participants and so many unknown sources of money."

The court found these facts by a preponderance of the evidence and applying them to the standards of complexity and intricacy required for sophisticated money laundering, concluded with "no difficulty . . . from a simple common-sense point of view, this [scheme] had to be sophisticated."

It is clear from the reasoning of the District Court that the elements of complexity and intricacy of the scheme that the District Court found to be relevant were the duration of the scheme, the difficulty in uncovering it because of the use of multiple outlets for cash exchanges, multiple couriers and other participants, and multiple locations; the secrecy of the underlying aspects of the scheme; the efforts to evade detection by the use of codes and untraceable electronic devices; and the multiple sources of cash. Our clear error review convinces us that the District Court appropriately considered the factors that make a scheme sophisticated and that it did not err in establishing that the facts of the scheme supported the determination of sophistication.[4]

---

[4] Fish argues that we should be wary of setting the

8

Few courts of appeals have analyzed U.S.S.G. § 2S1.1(b)(3), and most have done so in cases involving at least one of the factors of sophisticated money laundering identified in Application Note 5. *See United States v. Fernandez*, 559 F.3d 303, 320 (5th Cir. 2009) (affirming the application of the enhancement because the district court "could have concluded that the charged transactions involved . . . 'layering' [and] . . . shell corporations"); *Charon*, 442 F.3d at 891-92 (affirming the district court's application of U.S.S.G. § 2S1.1(b)(3) where the district court found that the defendant's actions constituted layering); *Pizano*, 421 F.3d at 731 (holding that the district court did not err in applying the sophisticated laundering enhancement "because the district court found that the [defendant] engaged in layering and she does not dispute that finding"); *Miles*, 360 F.3d at 482 (affirming the application of the enhancement because "[w]hen an individual attempts to launder money through 'two or more levels of transactions,' the commentary clearly subjects an individual to the sophisticated laundering enhancement").

The Fifth Circuit Court of Appeals, however, affirmed the application of U.S.S.G. § 2S1.1(b)(3) in a case, similar to this one, that did not involve any of the factors of sophisticated money laundering identified in Application Note 5. *See United States v. Chon*, 713 F.3d 812, 823 (5th Cir. 2013). In that case, the court rejected the defendant's

sophistication bar too low. We do not believe that allowing district courts to look beyond the "typical" examples of sophisticated money laundering identified in Application Note 5 sets the bar too low.

9

argument that his actions "[did] not constitute 'sophisticated means' as defined in the sentencing commentary" to U.S.S.G. § 2S1.1(b)(3) and held that "[m]aintaining two sets of books, skimming income on a daily basis, and disguising alien-smuggling proceeds as 'parking income' in an attempt to make the criminally derived funds appear legitimate are sufficiently complex to support the enhancement . . .." *Id.*

Similarly here we reject Fish's argument that his conduct does not constitute sophisticated money laundering. There are adequate facts here to support the District Court's conclusion that the elements and procedures of the scheme made it a sophisticated one.

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's judgment of sentence.