NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-3195

———————

UNITED STATES OF AMERICA

v.

ADDO OBENG,

Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1-13-cr-00673-001)
District Judge: Honorable Robert B. Kugler

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 3, 2016

Before: McKEE, *Chief Judge*, SMITH, and HARDIMAN, *Circuit Judges*.

(Opinion Filed:  September 1, 2016)

———————

OPINION[*]

———————

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

McKEE, *Chief Judge*.

Addo Obeng appeals the district court's imposition of three, two-level sentencing enhancements applied to his conviction for conspiring to transport stolen motor vehicles overseas. For the following reasons, we will affirm the judgment of the district court.

**I**

In October 2013, Addo Obeng, a native of Ghana and legal permanent resident of the United States, pleaded guilty to conspiring to transport stolen motor vehicles overseas, in violation of 18 U.S.C. § 2312 and 18 U.S.C. § 371. Obeng was one of six individuals who were charged with trafficking carjacked and otherwise stolen vehicles to West Africa. Obeng acted as an exporter of stolen vehicles from Port Newark/Elizabeth to customers in Africa, purchasing the vehicles from large scale "fences." The trafficking ring was a multi-tiered operation that employed street level carjackers/thieves, fences, "runners" (who drove the cars to secure locations during a "cooling off" period), "retaggers" (who changed VINs and obtained counterfeit titles), and exporters like Obeng (who obtained fraudulent documentation and facilitated the shipping process).

In the plea agreement, the parties agreed that Obeng's total offense level was 15, and that the parties would not argue for any upward or downward departure, adjustment or variance not set forth in the plea agreement. However, Obeng's presentence report concluded that four additional two-level sentencing enhancements were appropriate

because the offense (1) involved 10 or more victims,[1] (2) involved being in the business of receiving and selling stolen property,[2] (3) employed sophisticated means,[3] and (4) involved the conscious or reckless risk of death or serious bodily injury and possession of a dangerous weapon.[4]  The presentence report recommended a total offense level of 23.

At Obeng's sentencing hearing, the district court decided to exercise its "independent obligation" to determine Obeng's offense level, as opposed to merely accepting either the recommendations in the plea agreement or the presentence report. App. 22-23  The district court rejected the presentence report's recommended enhancement of two points for the risk of death or serious bodily injury and ultimately arrived at an offense level of 21.  This correlated with a recommended sentencing range of 41 to 51 months' imprisonment.  Obeng was sentenced to 48 months imprisonment, three years supervised release, and he was ordered to pay $102,403.86 in restitution. Obeng appeals.

## II.[5]

Obeng challenges the applicability of the various sentencing adjustments used to calculate his ultimate Guidelines range.  We exercise plenary review over the district

---

[1] *See* U.S.S.G. § 2B1.1(b)(2)(A)(i).
[2] *See* U.S.S.G. § 2B1.1(b)(4).
[3] *See* U.S.S.G. § 2B1.1(b)(10).
[4] *See* U.S.S.G. § 2B1.1(b)(15).
[5] We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

court's interpretation of the Guidelines,[6] but we review for clear error the factual findings used by the District Court to support the application of a sentencing adjustment.[7]

## III.

Obeng first challenges the district court's adoption of the presentence report's conclusion that there were ten or more victims of Obeng's crimes. Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), if a defendant's offense involves ten or more victims, the defendant's offense level is raised by two points. The Application Notes to § 2B1.1 define "victim" as "any person who sustained any part of the actual loss" or "any individual who sustained bodily injury as a result of the offense."[8]

Here, the presentence report documented at least ten stolen vehicles that it could directly link to Obeng's activities.[9] Obeng did not object to the facts presented by the presentence report. We have long held that "[a] conclusion in the presentence investigation report which goes unchallenged by the defendant is, of course, a proper basis for sentence determination."[10] We are unpersuaded by Obeng's argument that the district court ought to have only considered conduct that he admitted to in the plea agreement. The Sentencing Guidelines themselves state that courts are not bound by the

---

[6] *See United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).
[7] *United States v. Fish*, 731 F.3d 277, 279 (3d Cir. 2013).
[8] U.S.S.G. § 2B1.1(b)(2)(A)(i) cmt. n.1.
[9] These ten vehicles included a 2009 Mercedes ML350, PSR ¶ 45, a 2009 Toyota Corolla, PSR ¶¶ 50, 54, a 2011 Acura RDX, PSR ¶¶ 50, 54, a 2011 Jaguar FX, PSR ¶¶ 58, 62, a 2010 Mercedes GL450, PSR ¶ 66, a 2010 Mercedes E350, PSR ¶ 66, a 2009 BMW750, PSR ¶ 63, a 2011 Land Rover Range Rover, PSR ¶¶ 64, 78-79, a 2007 Toyota RAV-4, PSR ¶¶ 74, 78-79, and a 2009 Honda Accord, PSR ¶¶ 77-79.
[10] *United States v. McDowell*, 888 F.2d 285, 290 n.1 (3d Cir. 1989).

stipulations in plea agreements but may instead rely in part on the presentence report to "determine the facts relevant to sentencing."[11] The district court therefore did not clearly err in applying the two-level sentencing enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i).

Next, Obeng appeals the district court's imposition of a two-level enhancement for being in the business of receiving and selling stolen property under U.S.S.G. § 2B1.1(b)(4) because he claims that his involvement was limited to the receipt and transport of only two stolen vehicles.[12] When determining whether a defendant was in the business of selling and receiving stolen property, courts consider, among other things, (A) the regularity and sophistication of the defendant's activities; (B) the value and size of the inventory of stolen property maintained by the defendant; (C) the extent to which the defendant's activities encouraged or facilitated other crimes; and (D) the defendant's past activities involving stolen property.[13]

In *United States v. Fofanah*,[14] another stolen vehicle trafficking case, the Court imposed a two-level sentencing enhancement under § 2B1.1(b)(4). The court held that Fofanah was in the business of receiving and selling stolen property due to the number of

---

[11] U.S.S.G. § 6B1.4; *see also United States v. Ketcham*, 80 F.3d 789, 792 n.6 (3d Cir. 1996).

[12] Section 2B1.1(b)(4) of the Guidelines provides that: "If the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property, increase by 2 levels." It is undisputed that Obeng's offense involved receiving stolen property.

[13] *See* U.S.S.G. § 2B1.1, cmt. n.5.

[14] 765 F.3d 141 (2d Cir. 2014).

5

vehicles involved (17) as well as other indications that Fofanah was a "repeat player" in the stolen vehicle business.[15] Here, Obeng has been directly linked to no less than 10 stolen vehicles. Obeng's presentence report also sets forth uncontested facts as well as accounts from a confidential source indicating that Obeng had been in the business of receiving and selling stolen cars.[16] The presentence report indicates a high level of sophistication and coordination among multiple parties, including Obeng. Moreover, the vehicles stolen included luxury vehicles with relatively high values, and undisputed facts in the presentence report indicate that Obeng not only received them but also sold them overseas.[17] Accordingly, the district court did not clearly err when it imposed the two-level enhancement under § 2B1.1(b)(4).[18]

Finally, Obeng appeals the district court's imposition of a two-level enhancement for the use of sophisticated means.[19] Section 2B1.1(b)(10) states, in relevant part, that if "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means, increase by 2 levels." Application Note 9(B) defines sophisticated means as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense," and further provides that "[c]onduct such as hiding assets or transactions . . . through the use

---

[15] *Id*. at 147-48.

[16] PSR ¶¶ 33, 43, 44, 47, 54.
[17] *Id*. ¶¶ 44, 47, 54.
[18] *See* U.S.S.G. § 2B1.1, cmt. n.5.
[19] *See* U.S.S.G. § 2B1.1(b)(10).

of fictitious entities . . . ordinarily indicates sophisticated means."[20]  We agree with Obeng's general assertion that sentencing courts must conduct "a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy."[21]

Here, the district court conducted just such an inquiry.  In determining that Obeng's offense employed sophisticated means, the district court observed,

> And there's no question sophisticated means were used, and *particularly by this defendant who had some experience in the shipment of these automobiles overseas.* It's not easy to put this [sort of operation] together. Various levels that were involved in the theft on the street of the homes of the victims, getting them in a position where they're driven into the containers and loaded on a ship. That is sophisticated. So I think that two level increase is justified by a preponderance of the evidence.[22]

Obeng himself does not contest the overall sophistication of the international scheme in which he was involved.  He only argues that his involvement was so minimal that it cannot be deemed sophisticated.  As is obvious from our brief summary of the facts, his argument is negated by the record.  The record shows that Obeng relocated stolen cars from one storage facility to another to avoid detection by the authorities.[23]  Some of the cars that Obeng shipped and sold overseas traveled in a shipping container under fraudulent paperwork.[24]  Further, the company name that was used to ship some of the

---

[20] U.S.S.G. § 2B1.1 cmt. n.9(B).
[21] *United States v. Evans*, 155 F.3d 245, 254 (3d Cir. 1998) (internal quotations and citation omitted).
[22] App. at 22-23 (emphasis added).
[23] PSR ¶ 62.
[24] *Id.* ¶¶ 53, 54.

cars was not registered with the Federal Maritime Commission.[25]  These facts point to sophisticated attempts to conceal the stolen vehicles.  Accordingly, the district court did not clearly err when it determined that Obeng used sophisticated means to commit his offense.[26]

We note that Obeng does not argue on appeal that his sentence was substantively unreasonable.  "It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals."[27]  We therefore decline to address the substantive reasonableness issue.

IV.

For the reasons stated, we will affirm the judgment of sentence.  We also note that Obeng requests permission to represent himself and file an amended brief.  These requests are hereby denied.

---

[25] PSR ¶ 52.

[26] *See* U.S.S.G. § 2B1.1(b)(10).

[27] *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).