NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1105
_____

UNITED STATES OF AMERICA

v.

MIGUEL AMARIS-CAVIEDES,

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-14-cr-00243-001)
District Judge: Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 26, 2017

Before: HARDIMAN, ROTH, and FISHER, *Circuit Judges*.

(Filed: June 9, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Miguel Amaris-Caviedes appeals the District Court's order sentencing him to 60 months' imprisonment for two international money laundering crimes. He alleges that the District Court erroneously increased his sentence based on a finding that the offense was sophisticated. Finding no clear error, we will affirm.

I

In 2013, the Drug Enforcement Administration (DEA) began investigating Amaris-Caviedes on suspicion of money laundering in Costa Rica. While under investigation, Amaris-Caviedes traveled to Philadelphia to meet with several cooperating sources and offered to provide various illicit services to assist their purported drug-related activities.

Amaris-Caviedes eventually agreed to launder money for two of the cooperating sources. Specifically, Amaris-Caviedes agreed to use his business in Costa Rica to receive wire transfers from a Philadelphia account. He would then reroute the money (minus a fee) to an account in Puerto Rico, and provide fake invoices from his business to make the transfers appear legitimate. To avoid suspicion, Amaris-Caviedes recommended that the money be sent in two smaller transfers.

In November 2013, the DEA wired funds to Amaris-Caviedes's Costa Rican business account from an undercover account in Philadelphia. As had been arranged, Amaris-Caviedes then wired the money to another undercover DEA account in Puerto Rico and provided the cooperating sources with fictitious invoices.

2

In May of 2014, Amaris-Caviedes was indicted and charged with two counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). He pleaded guilty and the District Court sentenced him to 60 months' imprisonment. This appeal followed.

II[1]

Amaris-Caviedes claims that the District Court committed clear error when it imposed a two-level enhancement for "sophisticated laundering" pursuant to United States Sentencing Guidelines (USSG) § 2S1.1(b)(3). "'[S]ophisticated laundering' means complex or intricate offense conduct pertaining to the execution or concealment of the . . . offense." *Id.* at App. Note 5(A). Application Note 5 explains that "[s]ophisticated laundering typically involves the use of: (i) fictitious entities; (ii) shell corporations; (iii) two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or (iv) offshore financial accounts." *Id.* We have held that the "factors listed in Application Note 5 are illustrative but not required; they are typical but non-exhaustive." *United States v. Fish*, 731 F.3d 277, 280 (3d Cir. 2013).

At the outset, we note Amaris-Caviedes used "offshore financial accounts" because he made the transfers via his Costa Rican bank account. *See* USSG § 2S1.1(b)(3) App. Note 5(A)(iv). This fact alone provides sufficient basis for the District Court's

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We review for clear error the District Court's "application of the undisputed facts to the requirements for the enhancement." *United States v. Fish*, 731 F.3d 277, 279 (3d Cir. 2013).

sophistication determination. *See Fish*, 731 F.3d at 280–81; *United States v. Miles*, 360 F.3d 472, 482 (5th Cir. 2004) (explaining that where one of the Note 5 factors are met, "the commentary *clearly subjects* an individual to the sophisticated laundering enhancement" (emphasis added)). Without citing any relevant law, Amaris-Caviedes suggests that the term "offshore bank account" encompasses only banks in countries that provide protection from law enforcement. We disagree. The Guidelines do not so qualify "offshore financial account," and the term's plain meaning embraces *all* foreign bank accounts. *See Offshore*, Oxford English Dictionary (3d ed. 2004) ("In a territory outside one's own country.").

Although the offshore aspect of the transactions would suffice to affirm, there is more. The District Court noted that Amaris-Caviedes knew that the purpose of the transactions was to conceal drug money, and that the transactions involved: (a) transfers of money on multiple levels; (b) false invoices; (c) use of legitimate businesses to conceal ill-gotten gains; and (d) a plan to structure the transactions to avoid the attention of authorities. The District Court did not clearly err in finding that these facts supported a determination of sophistication. *See Fish*, 731 F.3d at 280 (upholding a sophistication finding where the District Court noted, *inter alia*, the "difficulty in uncovering" the scheme and the defendant's "efforts to evade detection").

Amaris-Caviedes's arguments to the contrary are unavailing. First, he argues that the District Court "deemed money laundering, by its nature, to require sophisticated means," and thus did not consider whether Amaris-Caviedes's conduct was sophisticated

4

relative to other money laundering offenses. Amaris-Caviedes Br. 14. It's true that early in the sentencing proceeding the District Court remarked that "it's hard to argue that any money laundering scheme, even if it's a mom-and-pop money launderer, is not sophisticated." *Id.* at 10. But by the time the District Court made the sophistication determination, it had corrected itself—properly comparing Amaris-Caviedes's conduct to other money laundering offenses. *See id.* at 13 ( "[T]o suggest that . . . this was . . . a generic or garden variety money laundering scheme really is at odds with the evidence and with the proof. . . . ").

Second, Amaris-Caviedes argues that the District Court "placed improper weight on conduct not relevant to the sophistication of the actual offense." *Id.* at 23. For example, the Government presented testimony at sentencing that Amaris-Caviedes told an informant he could provide trade-based money laundering services by purchasing goods abroad, importing them via cargo ships, and selling them in Costa Rica. But contrary to Amaris-Caviedes's contention, the District Court made no mention of these hypothetical transactions when making its sophistication determination. And even if it had, the Court was entitled to consider the entirety of Amaris-Caviedes's conduct in applying the enhancement. *See United States v. Charon*, 442 F.3d 881, 892 (5th Cir. 2006).

\*　　　\*　　　\*

For the reasons stated, we will affirm the order of the District Court.

5