NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3558

_____

UNITED STATES OF AMERICA

v.

GARY FRANK,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-19-cr-00180-001)
District Judge:  Honorable Gerald J. Pappert

_____

Submitted under Third Circuit LAR 34.1(a)
on July 7, 2022

Before: SHWARTZ, KRAUSE and ROTH, <u>Circuit Judges</u>

(Opinion filed:  June 13, 2023)

_____

OPINION[*]

_____

ROTH, <u>Circuit Judge</u>

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Gary Frank pleaded guilty to charges of wire fraud, bankruptcy fraud, and money laundering. The District Court sentenced Frank to 210 months' incarceration. Frank challenges four of the District Court's sentence enhancements, including one based on the District Court's finding of intended loss under U.S.S.G. § 2B1.l(b)(l). In view of our holding in *United States v. Banks*, we will affirm the judgment of the District Court except as to the enhancement based on intended loss.

**I.**

Frank was the owner and CEO of the Legal Coverage Group, Ltd. (LCG). Frank formed LCG in the mid-1990s after he graduated from Villanova Law School. From 2006 to 2018, Frank executed a fraudulent scheme in which he tricked investors into believing that LCG's business, which generated several hundred thousand dollars of annual revenue and employed approximately ten staff members, generated hundreds of millions of dollars of annual revenue and employed hundreds of people. Through his lies and creation of phony documents, Frank defrauded sophisticated banks and financial institutions, including DNB First, N.A. (DNB) and the Prudential Insurance Company of America and Prudential Retirement Insurance and Annuity Company (collectively, Prudential). Frank also tricked many individuals, including a close friend and his wife. He deceived LCG's customers, employees, vendors, lawyers, and accountants, as well as his fellow board members at several prominent nonprofit organizations. Through this fraud, Frank obtained more than $30 million in loans, which he used to fund his own extravagant lifestyle over a twelve-year period. When loan repayment became due, he sought an additional $80 to

2

$100 million in financing. Eventually, the Federal Bureau of Investigation searched LCG's offices, and the U.S. Bankruptcy Court froze LCG's and Frank's bank accounts.

After Frank pleaded guilty to charges of wire fraud, bankruptcy fraud, and money laundering, the court sentenced him to 210 months' incarceration and ordered him to pay $33,702,900 in restitution. This sentence was below the advisory sentencing guideline range, which the court calculated as 262 to 327 months' incarceration. However, the sentence included several enhancements to which Frank objected at sentencing. Frank challenges four of these enhancements on appeal.

## II.

The four enhancements Frank challenges are (1) a two-level enhancement for use of sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C), (2) a two-level enhancement for use of a special skill under § 3B1.3, (3) a two-level enhancement under § 2B1.1(b)(2)(A)(i) because the offense involved ten or more victims, and (4) a 24-level enhancement under § 2B1.1(b)(1)(M) for an intended loss amount of more than $65 million but not more than $150 million. We will affirm the District Court's ruling as to the first three challenges. Based on our holding in *United States v. Banks*,[1] however, we will vacate the sentence based on the fourth challenge and remand for resentencing.[2]

### A. Sophisticated Means

First, Frank argues that the District Court erred in applying a two-level upward

_____

[1] 55 F.4th 246 (3d Cir. 2022).
[2] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. We also have jurisdiction to review a criminal sentence under 18 U.S.C. § 3742.

adjustment for use of sophisticated means under § 2B1.l(b)(10)(C). Despite Frank's arguments to the contrary, the standard of review is clear error.[3] We hold that the District Court correctly found that his offense involved sophisticated means based on his lawsuit against Prudential, the use of fake confidentiality agreements, the filing of a bogus bankruptcy petition, the falsification of wire transfer confirmations, financial records, due diligence documents, employee records, and the filtering of his lies through lawyers and investment bankers.

As the District Court properly found, "Frank's 12-year-long fraud, his strategic abuse of the civil justice system, elaborate misdirection and the mountain of fraudulent documents he created prove that his offenses involved greater planning and concealment than a typical fraud of this kind."[4]

From causing his investment banker to create unknowingly false financial records for LCG to filing a frivolous lawsuit against Prudential to conceal his fraud and then filing for bankruptcy to stay the civil litigation, Frank's scheme involved an exceptional degree of planning and concealment. On the basis of these facts, the District Court stated that it was "extremely easy to conclude by a preponderance of the evidence that . . . Frank's conduct showed a greater level of planning and concealment than a typical fraud of its

---

[3] *See United States v. Fountain,* 792 F.3d 310, 318 (3d Cir. 2015) (examining a challenge to a sophisticated means adjustment under § 2B1.1 on undisputed facts under clear error standard); *United States v. Fish,* 731 F.3d 277, 279 (3d Cir. 2013) (examining a challenge to a sophisticated means enhancement under § 2B1.1 on undisputed facts under clear error standard).
[4] Appx. 1345.

kind."[5]

## B. Special Skills

Second, Frank argues that the District Court erred in applying a two-level upward adjustment for use of a special skill under § 3B1.3. We review de novo a district court's legal interpretation of the Guidelines, including whether a defendant possesses a "special skill" under § 3B1.3.[6] For the two-level special skills adjustment to apply, two factors must be present: "(1) the defendant possesses a special skill; and (2) the defendant used it to significantly facilitate the commission or concealment of the offense."[7] Both factors are met here.

Frank had skills in law and accounting, both of which qualify as "special skills" under § 3B1.3. The District Court found that Frank acquired these skills "through his 25 years of experience in [the legal services] industry."[8]

The District Court properly found both that Frank possessed special skills under Section 3B1.3 and that Frank used these special skills to commit and conceal his crimes. The District Court "easily" found by a preponderance of the evidence that Frank's knowledge of accounting helped him make the fraudulent financial documents "look as good as they did."[9] The District Court also found that Frank used his special skills to "strategically abuse[] the civil justice system and fabricate a plausible business model

---

[5] Appx. 1344.
[6] *United States v. Urban*, 140 F.3d 229, 234 (3d Cir. 1998).
[7] *United States v. Tai*, 750 F.3d 309, 318 (3d Cir. 2014) (quotation omitted).
[8] Appx. 1351.
[9] Appx. 1351.

5

requiring huge loans."[10]  These actions facilitated the commission and concealment of Frank's fraudulent scheme.

### C. Ten or More Victims

Third, Frank argues that the District Court clearly erred by adding a two-level enhancement when there were not ten or more victims of the offense under § 2B1.1(b)(2)(A)(i).  We exercise plenary review over the District Court's interpretation of the Guidelines and review findings of fact that support enhancements for clear error.[11]  Frank initially argues that neither DNB bank nor his friend's wife, D.S., are victims under the Guidelines.  We disagree.

Frank argues that DNB is not a victim because the bank received full credit against its loss.  Application Note 3(E)(ii) applies because Frank's condominium secured DNB's $600,000 loan to LCG.  This note states:

> In a case involving collateral pledged or otherwise provided by the defendant, [loss shall be reduced by] the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.[12]

At the time of Frank's sentencing, DNB had recovered no funds from the disposition of Frank's condominium because the bank had been unable to sell it.  Therefore, the District Court needed to determine the fair market value of the condominium and give Frank any credit for this value.  After reviewing the evidence, the District Court made a factual finding

---

[10] Appx. 1351.

[11] *United States v. Smith*, 751 F.3d 107, 118 (3d Cir. 2014) (citing *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc)).

[12] U.S.S.G. § 2B1.1 app. note 3(E)(ii).

that the fair market value was $550,000.

Having made this factual finding on fair market value, the District Court then reduced DNB's $600,000 loss by the $550,000 value of the collateral and concluded that DNB's actual loss was $50,000. The District Court did not commit clear error in finding DNB was a victim given the loss of $50,000.

Frank initially contested the District Court's inclusion of D.S. as a victim in its calculation of whether Frank had ten or more victims. However, D.S. was no doubt a victim as she received Frank's misrepresentations indirectly through her husband and was the person who transferred loaned funds to Frank in August 2017. In his reply brief, Frank then withdrew his argument that D.S. was not a victim, but contends that she was not a *foreseeable* victim. That argument also fails. The District Court properly noted that because Frank was pursuing loans from D.S.'s husband, R.K., it was reasonably foreseeable that D.S., as his partner, would suffer some pecuniary harm. There was no clear error in reaching this conclusion.

### D. Intended Loss

Finally, Frank challenges the District Court's enhancement based on intended loss under U.S.S.G. § 2B1.l(b)(l). Our holding in *United States v. Banks* compels vacatur of the sentence because the District Court used the *intended* loss instead of the *actual* loss to calculate this sentencing enhancement. We review this legal issue de novo,[13] and we review the District Court's factual findings in support of the intended-loss enhancement

---

[13] *United States v. Nasir*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc).

for clear error.[14]

Section 2B1.1 provides a graduated sentencing enhancement scale based on victims' monetary losses. In *Banks*, we held that, to decide the level of sentencing enhancement based on this scale, courts must use actual loss—not intended loss.[15]

Here, the District Court found that the intended loss was between $65 and $150 million.[16] In accordance with § 2B1.1, it then added twenty-four levels to the offense level. This use of intended loss to calculate Frank's sentencing enhancement was error.

Unfortunately, the District Court did not make a finding on the actual loss. It did note that the "presentence investigation report calculate[d] the actual loss at $34,725,000 [and Frank] assert[ed] that the actual loss is only $24,244,443."[17] The court explained that, because it understood the guidelines to require it to apply the greater of the actual and intended loss, it did not need to make a finding on the actual loss.[18] The intended loss greatly exceeded both figures. Because the District Court used intended loss to determine the offense level and made no finding on actual loss, we will vacate the judgment of sentence and remand this case to the District Court to recalculate the sentence in light of *Banks*.

**IV.**

---

[14] *United States v. Huynh*, 884 F.3d 160, 165 (3d Cir. 2018).
[15] *Banks*, 55 F.4th at 258 (explaining that the use of "intended loss" in the Sentencing Guideline's Commentary is an impermissibly expansive definition of "loss" in the Guidelines itself).
[16] Appx. 1321.
[17] Appx. 1315.
[18] Appx. 1314–1315.

For the foregoing reasons, although we conclude that the District Court properly ruled on Frank's first three challenges to his sentence, we will vacate and remand for resentencing because the District Court erred in applying an enhancement based on intended loss under U.S.S.G. § 2B1.l(b)(l).