# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20519

United States Court of Appeals
Fifth Circuit

**FILED**
September 16, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff–Appellant,

v.

ASHER ABID KHAN,

      Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CR-0263

Before SMITH, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge, with whom SMITH, Circuit Judge, joins in full, and DENNIS, Circuit Judge, joins in Parts I, IIA, IIB, and IID:

Asher Abid Khan pleaded guilty to one count of providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. The district court concluded that the Sentencing Guidelines' terrorism enhancement[1] did not apply and sentenced Khan to 18 months of imprisonment. The United States appeals the sentence as procedurally and substantively unreasonable. Because the district court procedurally erred in

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 3A1.4(a) (U.S. SENTENCING COMM'N 2016).

construing the enhancement, we vacate and remand for resentencing without addressing substantive reasonableness.

## I

We limit our recitation of the facts to those that are relevant to the present inquiry.

In 2013, defendant Asher Abid Khan was 19 years old and living in Houston. At that time, he began expressing radical Islamist views on the Internet. In October 2013, he relocated to Australia to live with relatives and continue his education. While residing in Australia, he continued discussing his radical views and his desires to relocate to the Middle East and join the Islamic State of Iraq and Syria (ISIS), an organization designated by the Secretary of State as a Specially Designated Global Terrorist Entity pursuant to § 1(b) of Executive Order 13224. Khan was aware at all times that ISIS was a designated foreign terrorist organization that engaged in terrorist activity.

In late 2013, Khan recruited Sixto Ramiro Garcia to join ISIS with him. Garcia had attended the same mosque as Khan before Khan left for Australia. Khan told Garcia that he was planning "to go to Iraq soon to join" ISIS. Eventually, the two agreed to travel to the Middle East together and join ISIS.

To facilitate his travel to the Middle East, Khan contacted Mohamed Zuhbi, an ISIS supporter living in Turkey who coordinated travel for ISIS recruits. Zuhbi said that he would help Khan travel to Syria should Khan arrive in Turkey. Khan and Garcia then coordinated their travel to Turkey in order to join ISIS. In February 2014, Khan and Garcia finalized their arrangements. Garcia departed Houston on February 23, 2014. Khan left Australia on February 24, 2014 and traveled to Turkey through Malaysia. When Khan arrived in Malaysia, he received numerous messages from his family in which they falsely stated that Khan's mother had had a heart attack. They asked that he return home as soon as possible. Khan informed Garcia

that he would return to the United States and would not be traveling to Syria at that time.  Khan and Garcia met in Istanbul where Khan gave Garcia money and Zuhbi's phone number.  Khan then left Turkey and returned home to Texas.

Garcia was unable to contact Zuhbi on his own and reached out to Khan for help.  Khan then contacted Zuhbi and explained that Garcia wanted to cross into Syria immediately, but Khan could not at that time.  Thereafter, Zuhbi and Garcia made contact, and Garcia later informed Khan that he had "been delivered" to Syria but had not yet joined ISIS.

While in Houston, Khan continued to distribute ISIS propaganda.  He also continued to communicate with Garcia. Via Facebook, Khan asked others to raise funds for Zuhbi.  Khan eventually learned that Garcia had joined a non-ISIS group in Syria.  In response, Khan implored Garcia to join ISIS.  He offered to support Garcia by sending him food and money.  In August 2014, Garcia told Khan that he had joined ISIS.

In September 2014, "all communications with Garcia ceased." Thereafter, Garcia's family asked law enforcement for assistance in finding him.  In December 2014, Garcia's mother received a Facebook message indicating that Garcia had gone to fight in Iraq and was believed to have "attained martyrdom."

Khan was arrested in May 2015.  He was initially charged with conspiracy and attempting to provide material support to a designated foreign terrorist organization in violation of 18 U.S.C. § 2339B.  Khan was released on bond.  Then in March 2016, a grand jury returned a six-count superseding indictment.  Khan pleaded guilty to Count Six of the indictment (providing material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1)) on December 4, 2017.  Count Six specifically charged that Khan provided material support and resources, including personnel, to a

designated foreign terrorist organization, and identified Garcia as having been provided by Khan to ISIS.

At sentencing, the district court calculated an advisory sentencing range under the U.S. Sentencing Guidelines Manual (2016) of 46 to 57 months.[2] As to the offense level, Guideline § 2M5.3 sets the base offense level for Khan's offense at 26.[3] The district court then applied a 3-level reduction for Khan's timely acceptance of responsibility to arrive at an overall offense level of 23. Khan had no prior criminal history. Together, an overall offense level of 23 and a criminal history category of I resulted in a Guidelines range of 46 to 57 months of imprisonment.[4]

Most relevant to this appeal, the district court declined to apply § 3A1.4's terrorism enhancement. With the enhancement, Khan's Guidelines range would have been 180 months of imprisonment, the statutory maximum penalty for Khan's offense.[5] The enhancement provides for a 12-level increase and dictates a criminal history score of VI if the offense "involved" or was "intended to promote" a "federal crime of terrorism."[6] To be considered a "federal crime of terrorism," the crime of conviction must be enumerated in 18 U.S.C. § 2332b(g)(5) and the offense must have been "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."[7] Providing material support to a terrorist organization

---

[2] U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2016).

[3] *Id.* § 2M5.3(a).

[4] *Id.* ch. 5, pt. A.

[5] *Id.* § 3A1.4. Notably, 18 U.S.C. § 2339B was amended effective June 2, 2015, to extend the maximum penalty to twenty years. *See* Uniting and Strengthening America by Fulfilling Rights and Ensuring Effective Discipline Over Monitoring Act of 2015, Pub. L. No. 114-23, § 704, 129 Stat. 268, 300 (2015).

[6] U.S. SENTENCING GUIDELINES MANUAL § 3A1.4(a) (U.S. SENTENCING COMM'N 2016).

[7] 18 U.S.C. § 2332b(g)(5); *see* U.S. SENTENCING GUIDELINES MANUAL § 3A1.4 cmt. n.1 (U.S. SENTENCING COMM'N 2016).

is an enumerated offense.[8]  As to the influence-or-retaliate prong, the United States argued that Khan's words and actions prior to arrest "demonstrate, by a preponderance of the evidence, his intention to influence or affect government conduct."  Khan argued that the enhancement should not apply. Specifically, he argued that he had intended to fight only "against the forces of Syrian President Bashar Al-Assad" as part of a civil war when there was "no universally recognized government."  He accordingly contends that his actions could not have been intended to influence a government.

Over the Government's objection, the district court concluded that the enhancement did not apply.  First, the court concluded that applying the enhancement would be impermissible double counting because Khan's offense was an intrinsically terroristic crime.  The district court analogized to felons convicted of possession of a firearm in which the government would then argue for an enhancement based on the use of a weapon.  The district court noted it would "not enhance this crime, which is intrinsically terroristic[,] by association to a bunch of other things that are listed in that statute."  Second, the district court concluded that the terrorism enhancement did not apply to conduct intended to influence a foreign government.  Third, the district court suggested that there are "degrees of terrorism" and that not all of Khan's actions could be described as terroristic.  The district court did not make factual findings as to whether Khan's conduct would have otherwise satisfied § 3A1.4's requirements.

Based on the district court's calculation of an advisory Guidelines range of 46 to 57 months of imprisonment, Khan requested a downward variance to a 12-month sentence.  He acknowledged it was an unusual and substantial request.  Addressing the 18 U.S.C. § 3553(a) sentencing factors, defense

---

[8] 18 U.S.C. § 2332b(g)(5).

No. 18-20519

counsel discussed Khan's age at the time of the offense and his efforts to rehabilitate himself. The defense noted that Khan had been furthering his education and was working productively. Additionally, the defense noted that Khan had volunteered to speak with Muslim youth potentially susceptible to jihadist propaganda. During sentencing, Khan apologized for his actions contributing to Garcia's death, urged that he and Garcia were "victim[s] of the same propaganda," and insisted that he never condoned attacking U.S. civilians.

The district court agreed that Khan was young and naïve. It noted that ISIS propaganda played a significant part in Khan's decision to join ISIS. The district court stated, "I don't think we need to lock you up for 15 years, and I have been pleased with your progress while you have been under my care." The district court applied a downward variance to impose 18 months of imprisonment and a 5-year term of supervised release. In its written statement of reasons, the district court justified the sentence based on "[t]he nature and circumstances of the offense," "[t]he history and characteristics of the defendant," and "[c]onduct [p]re-trial/[o]n [b]ond." It also stated that "[t]he Court considered the defendant's actual conduct in the offense and finds that a sentence of 18 months imprisonment is sufficient but not greater than necessary to meet the sentencing objectives under 18 U.S.C. § 3553(a)."

## II

This court reviews sentences to determine whether they are "reasonable."[9] The reasonableness inquiry involves two prongs: procedural reasonableness and substantive reasonableness.[10] This court applies "a

---

[9] *United States v. Rhine*, 637 F.3d 525, 527 (5th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)).

[10] *Id.*

bifurcated review process," first reviewing for procedural reasonableness and then, if this court finds no procedural error, for substantive reasonableness.[11]

## A

The procedural reasonableness inquiry requires us to determine whether "the district court committed a significant procedural error" at Khan's sentencing.[12] "[F]ailing to calculate (or improperly calculating) the Guidelines range" would constitute significant procedural error.[13]

As an initial matter, however, the parties disagree as to whether the United States preserved its objection to the procedural reasonableness of Khan's sentence. Khan argues plain error review is appropriate because the United States only objected to the district court's conclusion that the terrorism enhancement did not apply, not to the overall procedural reasonableness of Khan's sentence. Khan is mistaken. Objecting to the district court's failure to apply an enhancement under the Sentencing Guidelines necessarily asserts that the district court procedurally erred.[14] The United States preserved the issue, and we will therefore review the district court's application of the Guidelines de novo and its factual findings for clear error.[15]

## B

At oral sentencing, the district court appeared to rely on three rationales in concluding that the enhancement was inapplicable. We consider each.

---

[11] *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017).

[12] *Id.*

[13] *Gall*, 552 U.S. at 51.

[14] *See, e.g.*, *United States v. Martinez–Lugo*, 782 F.3d 198, 201 (5th Cir. 2015); *United States v. Fernandez*, 743 F.3d 453, 454-55 (5th Cir. 2014); *United States v. Brown*, 727 F.3d 329, 340 (5th Cir. 2013).

[15] *United States v. Piper*, 912 F.3d 847, 858-59 (5th Cir. 2019).

No. 18-20519

**1**

With regard to double counting, we noted in *United States v. Calbat*[16] that the Guidelines "do not contain a general prohibition against double-counting."[17] Instead, "double-counting is prohibited only if it is specifically forbidden by the particular guideline at issue."[18] Here, neither § 2M5.3 (the base offense for providing material support) nor § 3A1.4 (the terrorism enhancement) contains such a prohibition.[19] The district court's conclusion that the enhancement would result in impermissible double counting was mistaken.

**2**

The district court's conclusion that the enhancement does not apply to conduct intended to influence a foreign government was also mistaken. In *United States v. El-Mezain*,[20] we affirmed the district court's application of the enhancement to defendants who had aided Hamas in order to influence the conduct of the government of Israel.[21] Similarly, in *United States v. Puerta*,[22] an unpublished opinion from this circuit, we held that 18 U.S.C. § 2332b(g)(5) "refers broadly to 'government,'" foreign or otherwise.[23]

---

[16] 266 F.3d 358 (5th Cir. 2001).

[17] *Id.* at 364 (citing *United States v. Box*, 50 F.3d 345, 359 (5th Cir. 1995)).

[18] *Id.* (citing *Box*, 50 F.3d at 359).

[19] *See* U.S. SENTENCING GUIDELINES MANUAL §§ 2M5.3, 3A1.4 (U.S. SENTENCING COMM'N 2016); *see also United States v. Ali*, 799 F.3d 1008, 1030 (8th Cir. 2015) (holding that the § 3A1.4 enhancement can apply to a material support conviction); *United States v. Hammoud*, 381 F.3d 316, 355 (4th Cir. 2004), *cert. granted, judgment vacated*, 543 U.S. 1097 (2005), *and opinion reinstated in part*, 405 F.3d 1034 (4th Cir. 2005) (same).

[20] 664 F.3d 467 (5th Cir. 2011).

[21] *Id.* at 570-71; *see also United States v. Assi*, 428 F. App'x 570, 576 (6th Cir. 2011) (applying the enhancement to conduct aimed at influencing a foreign government); *United States v. Stewart*, 590 F.3d 93, 150-51 (2d Cir. 2009) (same).

[22] 249 F. App'x 359 (5th Cir. 2007).

[23] *Id.* at 360.

No. 18-20519

**3**

Lastly, to the extent the district court reasoned that there are "degrees of terrorism," some of which were insufficient to satisfy the enhancement's requirements, the district court was also mistaken.[24]   The enhancement's requirements are delineated in 18 U.S.C. § 2332b(g)(5).  The offense must be "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," and be in violation of an enumerated list of federal statutes.[25]   Monetarily supporting a terrorist organization in violation of 18 U.S.C. § 2339C may sometimes be less reprehensible than the taking of hostages in violation of 18 U.S.C. § 1203.  But that fact, though perhaps a relevant consideration when considering the § 3553(a) sentencing factors,[26] is immaterial when determining whether the enhancement applies.

**C**

Khan insists that he only intended to fight against the forces supporting Assad and to influence the Assad regime.  He maintains that the United States had ceased to recognize the legitimacy of the government led by Assad as the Syrian government and had instead recognized the Syrian National Opposition Coalition as the legitimate representatives of the Syrian people.  We need not resolve this issue because there is evidence that Khan intended to enter Iraq as part of his plan to join ISIS.  There is also evidence that he encouraged Garcia to join ISIS and provided funds for him to accomplish that mission, regardless of whether Garcia would be fighting in Iraq or Syria.  Garcia did in fact travel to Iraq and joined ISIS.  In any event, ISIS is an enemy of the United

---

[24] ROA.556.

[25] 18 U.S.C. § 2332b(g)(5).

[26] *Id.* § 3553(a)(1) (requiring a sentencing court to consider, *inter alia*, "the nature and circumstances of the offense" when imposing a particular punishment).

States.  Supporting ISIS, including by encouraging Garcia to join ISIS and funding Garcia in that mission, is some evidence that Khan's conduct was calculated to influence or affect the conduct of the United States because ISIS's terrorist acts are intended to intimidate or coerce the United States.

It is for the district court to decide in the first instance whether, as a factual matter, the terrorism enhancement applies.  But because there is evidence that would support a finding that Khan's conduct was calculated to influence or affect the conduct of the government of Iraq, the United States, or both, the procedural error in concluding that the enhancement did not apply is not a moot point.

## D

As noted, the district court committed procedural error in concluding, as a matter of law, that the terrorism enhancement does not apply and therefore failing to determine whether, as a factual matter, the enhancement applies. "[W]e must remand unless the error was harmless."[27]  To show that an error is harmless, Khan, as the proponent of the sentence, must show that the district court (1) would have imposed the same sentence if it had not made the error and (2) would have done so for the same reasons.[28]  Then, Khan must demonstrate that the district court "was not influenced in any way by the erroneous Guidelines calculation."[29]  The record before us does not permit either conclusion.  It is therefore necessary to vacate Khan's original sentence and remand for resentencing.

---

[27] *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017) (citing *United States v. Delgado–Martinez*, 564 F.3d 750, 752-53 (5th Cir. 2009)).

[28] *United States v. Martinez–Romero*, 817 F.3d 917, 924 (5th Cir. 2016) (citing *United States v. Ibarra–Luna*, 628 F.3d 712, 718-19 (5th Cir. 2010)).

[29] *Id.* (quoting *Ibarra–Luna*, 628 F.3d at 719).

No. 18-20519

\*      \*      \*

For the foregoing reasons, we VACATE Khan's sentence and REMAND for resentencing.  The mandate shall issue forthwith.