**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3217
_____

UNITED STATES OF AMERICA

v.

MUSTAFA MOUSAB ALOWEMER,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:19-cr-00219-001)
District Judge: Honorable Marilyn J. Horan

_____

Argued: December 11, 2023

Before: BIBAS, PORTER, and FREEMAN, *Circuit Judges*

(Filed: March 12, 2024)

Samuel G. Saylor        **[ARGUED]**
FEDERAL PUBLIC DEFENDER'S OFFICE
1001 Liberty Avenue
Pittsburgh, PA 15222
    *Counsel for Appellant*

Laura S. Irwin
Matthew S. McHale       **[ARGUED]**
U.S. ATTORNEY'S OFFICE
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
    *Counsel for Appellee*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

Serious crimes deserve serious punishments. Mustafa Alowemer, an ardent ISIS supporter, wanted to avenge ISIS members killed by the U.S. and Nigerian governments. To that end, he plotted to bomb a Nigerian-American church. So the District Court applied a sentencing enhancement for terrorism. Because he committed this crime to retaliate against government conduct, we will affirm that enhanced sentence.

## I. ALOWEMER PLOTTED TO BOMB A CHURCH

Alowemer was born in Syria but fled its civil war. He got asylum here and moved to Pittsburgh. As a teenager, he lived a seemingly normal life, learning English quickly and graduating from high school.

But in his spare time, Alowemer became a radical Islamist. He drank in online propaganda for ISIS (Islamic State of Iraq and greater Syria) and started chatting with ISIS supporters on Facebook. One of his contacts was an undercover FBI agent posing as an ISIS member. Alowemer told this agent that he

wanted to return to Syria for jihad, asked for a gun with a silencer, and sent a video of himself pledging allegiance to ISIS's leader.

Alowemer also asked to meet other ISIS "brothers" in person. App. 489–90. So the agent put him in touch with another agent posing as an ISIS member. During their meetings, they discussed ISIS's goals and ideology; Alowemer shared ISIS propaganda, such as a video of the White House burning with an ISIS flag being raised in the place of a tattered American flag. He was later found with similar videos, including one showing an ISIS banner spreading through northern Nigeria.

Alowemer then began proposing various attacks on ISIS's behalf before settling on a plan: bombing a Nigerian-American church in Pittsburgh. He hoped that this bombing would "inspire other similar like-minded … supporters to carry out similar attacks." App. 518. And he suggested "leaving the ISIS flag" at the site afterwards "to be able to claim credit for ISIS." App. 511. Next, Alowemer scoped out the church, marked up maps of the area, created a detailed checklist for the attack, and bought supplies to build a bomb. But before he could carry out the attack, he was arrested and pleaded guilty to trying to materially support a terrorist group, in violation of 18 U.S.C. §2339B(a)(1).

At sentencing, after a hearing, the District Court applied a terrorism enhancement. It found that Alowemer's attempted attack was "motivated at least in part … to support the cause of ISIS, to inspire other ISIS sympathizers present in the United States to join together and to commit similar acts in the name of ISIS, and to take revenge for 'our ISIS brothers in

Nigeria.'" App. 666–67. So it concluded that his crime was "calculated to influence or affect the conduct of government[ ]" and "to retaliate against the United States and Nigerian governments for their conduct in relation to ISIS brothers." App. 670 (quoting and applying 18 U.S.C. §2332b(g)(5)(A)'s definition of a "[f]ederal crime of terrorism"). The court added a twelve-level terrorism enhancement, sentencing him to more than seventeen years in prison. U.S.S.G. §3A1.4(a).

Alowemer now challenges that enhancement. We review the District Court's reading of the Sentencing Guidelines de novo, its factfinding for clear error, and its application of the sentencing enhancement for abuse of discretion. *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009).

The government says we should review the District Court's application for clear error as well. That standard applies if a Guideline "sets forth a predominantly fact-driven test," meaning that "once the test is stated[,] no legal reasoning is necessary to the resolution of the issue." *United States v. Richards*, 674 F.3d 215, 221, 223 (3d Cir. 2012) (internal quotation marks omitted). For this enhancement, however, we must analyze the law, not just figure out the facts. So we review for abuse of discretion.

## II. BECAUSE ALOWEMER SOUGHT REVENGE AGAINST GOVERNMENTS, THE TERRORISM ENHANCEMENT APPLIES

Under the Sentencing Guidelines, a twelve-level enhancement applies if a defendant's crime was "a felony that involved, or was intended to promote, a federal crime of terrorism." U.S.S.G. §3A1.4(a). A "[f]ederal crime of terrorism," in turn, is a crime that both "(A) is calculated to influence or affect the

4

conduct of government by intimidation or coercion, or to retaliate against government conduct; and (B) is a violation of" one of various federal criminal laws. 18 U.S.C. §2332b(g)(5).

Alowemer concedes that his crime is a crime enumerated in subpart (B). So the only dispute is whether he intended to influence, affect, or retaliate against government conduct under subpart (A). He did.

The enhancement requires that Alowemer "calculated" his crime to achieve one of three goals. As our sister circuits have read the term, "calculated" means that he had to specifically intend one of those results. *See, e.g.*, *United States v. Wright*, 747 F.3d 399, 408 (6th Cir. 2014) (collecting cases from the Second, Fourth, and Seventh Circuits). The parties agree. So we focus on Alowemer's specific intent: his goals, not his motives.

A defendant may have mixed or multiple intents. But if one of them is to influence, affect, or retaliate against government conduct, the enhancement applies. The parties agree on that too, as do our sister circuits. *See, e.g.*, *United States v. Stein*, 985 F.3d 1254, 1267 (10th Cir. 2021) (holding that mixed intent to influence government and harm Muslims sufficed); *United States v. Van Haften*, 881 F.3d 543, 544–45 (7th Cir. 2018). The government bears the burden of proving that intent by a preponderance of the evidence. *United States v. Graham*, 275 F.3d 490, 517 (6th Cir. 2001); *United States v. Awan*, 607 F.3d 306, 315 (2d Cir. 2010).

The government argues that we can infer Alowemer's intent to influence the U.S. government from his support of ISIS. As the Fifth Circuit noted: "Supporting ISIS … is some evidence that [the defendant's] conduct was calculated to

influence or affect the conduct of the United States because ISIS's terrorist acts are intended to intimidate or coerce the United States." *United States v. Khan*, 938 F.3d 713, 719 (5th Cir. 2019).

Alowemer responds that he intended only to harm and frighten Christians, not to influence government conduct. He also stresses that he targeted civilians and a church, not government officials or buildings. And he argues that triggering the enhancement requires the government to identify specific government conduct that he intended to influence. On that approach, his active support for ISIS was not enough.

That dispute is thorny. But we need not resolve it now because, whether Alowemer intended to influence or affect a government's actions or not, he certainly "calculated [his crimes] … to *retaliate against* government conduct." 18 U.S.C. §2332b(g)(5)(A) (emphasis added). When asked why he wanted to target the Nigerian-American church, he said he sought to avenge his ISIS brothers who had been killed in Nigeria while fighting against the government. He also "referred to U.S. … forces as crusaders invading the Middle East." App. 493. So when he saw a U.S. soldier, he wanted to kill him "because [of what] … the U.S. military … w[as] doing against his brothers and sisters in Baghuz," the site of a recent battle and one of ISIS's last strongholds. App. 492–93. And he suggested "hunting" college students who "work with the military." App. 499. Alowemer told us what he was trying to do: avenge ISIS fighters attacked by the United States and Nigeria. That by itself triggers the enhancement.

### III. The Enhancement Was Proper Despite Alowemer's Mental Health

Separately, Alowemer claims that the District Court clearly erred by not considering his childhood trauma and poor mental health. Because of these conditions, he argues, the court should have taken his statements to the undercover agents with a grain of salt. But this argument fails too. The court considered that evidence but properly found that it did not negate his specific intent.

For starters, at sentencing, Alowemer mentioned his mental health only in passing while discussing the terrorism enhancement. He did not call expert witnesses to testify about his trauma and post-traumatic stress until after the court had decided to apply the enhancement. So the court did not have to spell out how it factored in his mental health.

Still, the District Court was thorough. It studied the filings, evidence, and record carefully. Considering all of that, it found that the terrorism enhancement could apply. Then, once Alowemer put on expert testimony and himself testified about his mental health, the court addressed it. The mental-health evidence helped to explain why he had fallen in with ISIS, but his actions were still intentional, knowing, and voluntary.

Though Alowemer claims he was just going along with the agents' suggestions, the evidence refutes that excuse. He proposed killing a soldier, bombing the Nigerian-American church, and planting a follow-up bomb. And his words were not empty. He carefully planned the church bombing, scoping out the location several times and mapping escape routes. He drew up check-lists. He even bought the materials to make a bomb. So when

7

he said he was planning to bomb the church in retaliation for government action against ISIS, the District Court reasonably took him at his word.

* * * * *

Alowemer sought revenge for U.S. and Nigerian military action against ISIS. He retaliated by plotting to bomb a church. This retaliation against government conduct triggered the terrorism enhancement. And his mental-health evidence does not undermine that intent. So we will affirm.