**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2337
_____

UNITED STATES OF AMERICA

v.

THOMAS SHER,
                            Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 1-19-cr-00191-006)
District Judge:  Honorable Robert B. Kugler
_____

Submitted under Third Circuit L.A.R. 34.1(a)
on March 11, 2024

Before:  BIBAS, MONTGOMERY-REEVES and ROTH, Circuit Judges

(Opinion filed: August 1, 2024)

_____

OPINION[*]
_____


ROTH, Circuit Judge

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Thomas Sher was convicted of health care fraud and conspiracy to commit the same. The District Court sentenced him to ninety-six months' imprisonment. Sher appealed his sentence, arguing that the court erred in its loss calculation and in its application of a sophisticated means enhancement. We will affirm the District Court's judgment of sentence.

## I. Background

Sher worked as a firefighter with the Margate Fire Department from 2003 to 2019 and as a fitness trainer beginning in 2014. In 2015, he joined an ongoing conspiracy to commit insurance fraud by convincing acquaintances with state-provided health insurance plans to purchase medically unnecessary compound medications.[1]

At the center of the conspiracy was Central Rexall Drugs, Inc. (CRD), a Louisiana-based compounding pharmacy that produced the medications. CRD paid commissions to a pharmaceutical sales representative, William Hickman, for each prescription that he or those working for him originated. Hickman enlisted recruiters, including Sher's brother Michael, and instructed them to target individuals with state-provided insurance plans and sign them up for the maximum number of refills.[2] The recruiters were paid a percentage of Hickman's commissions based on the amount of prescriptions they sold. The recruiters in turn enlisted and paid commissions to their own "pods" of sub-recruiters.

As a sub-recruiter in Michael's pod, Sher was at the lowest level of the conspiracy. In furtherance of the conspiracy, Sher approached friends and family about purchasing a

---

[1] Compound medications refer to prescriptions formulated specifically for a patient.
[2] We refer to Michael by his first name only to avoid confusion with the Appellant.

wellness supplement made by CRD, offering cash payments and free gym memberships as incentives. Sher instructed the individuals he enrolled to fill in demographic and insurance information on pre-printed prescription forms, then sent the forms up the chain to Michael and eventually to Hickman. Hickman then arranged for a doctor to sign the forms, often without evaluating the patients. In total, Sher submitted prescriptions for eighteen people, causing $936,889.28 of fraudulent insurance reimbursements,[3] while Michael's pod was responsible for $7,059,888.28 of fraudulent reimbursements.

After a jury trial, Sher was convicted on four counts of healthcare fraud and conspiracy to commit the same. The Probation Office (PO) prepared a Presentence Report (PSR) in which it calculated a total offense level of 31 and a Criminal History category of I, resulting in a guidelines range of 108 to 135 months' imprisonment. As relevant to Sher's appeal, the PSR applied an eighteen-level enhancement for causing a loss between $3.5 million and $9.5 million and a two-level enhancement for use of sophisticated means.[4] The PSR explained that because Sher "conspired and jointly engaged in health care fraud with his brother[,] . . . the loss amounts associated with [Michael's] prescriptions were within the scope of the jointly undertaken criminal activity and reasonably foreseeable to [] Sher pursuant to U.S.S.G. §1B1.3(1)."[5]

---

[3] Sher's own profits from the scheme totaled $114,152.60.
[4] The PSR initially did not apply the sophisticated means enhancement. However, the government objected to the PSR on that ground, and the PO sustained the objection. Sher objected to the PSR's loss calculation and its application of a three-level enhancement for causing loss to a government insurance program. The PO overruled both of Sher's objections.
[5] A199 n.13.

3

At sentencing, Sher objected to the loss calculation, arguing that it penalized him for exercising his right to trial. He also argued that the sophisticated means enhancement should not apply. The District Court overruled both objections. After applying a two-level downward departure, resulting in an offense level of twenty-nine, the court sentenced Sher to ninety-six months' imprisonment.[6] Sher appealed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review a district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error.[7] We review the application of a sentencing enhancement for abuse of discretion.[8]

## III. Discussion

Sher appeals the District Court's calculation of the loss amount and application of a sophisticated means enhancement. He also argues that the loss calculation and application of the sophisticated means enhancement amount to unconstitutional trial penalties. None of his arguments has merit, so we will affirm the District Court's judgment of sentence.

*First,* Sher argues the District Court erred by calculating the loss amount as the total loss caused by Sher's conspiracy pod, rather than the loss Sher directly caused. However, in cases of jointly undertaken criminal activity, the courts have considered as relevant conduct the actions of others if they were (i) within the scope of jointly undertaken criminal

---

[6] The downward variance accounted for the proposed guideline at U.S.S.G. § 4C1.1, which provides a two-level decrease for defendants with no criminal history points.
[7] *United States v. Adair*, 38 F.4th 341, 347 (3d Cir. 2022).
[8] *United States v. Alowemer*, 96 F.4th 386, 388 (3d Cir. 2024).

activity, (ii) in furtherance of the criminal activity, and (iii) reasonably foreseeable in connection with the criminal activity.[9]  Sher does not challenge the accuracy of the loss amount attributed to his pod or argue that those losses do not qualify as relevant conduct.[10]  Nor can he reasonably do so.[11]  As a result, this argument fails.

*Second*, Sher argues that the District Court erred by applying a sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C).  That section applies when the offense "involve[s] sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means."[12]  The District Court applied the enhancement based on the duration of the conspiracy, Sher's efforts to avoid detection, and the fact that the scheme involved sixty-nine participants, among other factors we have identified as supporting its application.[13]  It did not err by looking at the whole picture rather than just at Sher's own conduct.[14]  Sher also emphasizes that he was merely a "low-level conspirator

---

[9] U.S.S.G. § 1B1.3(a)(1)(B).

[10] Instead, Sher argues the District Court failed to "conduct an independent loss analysis." Appellant's Br. 16.  However, he offers no support for that argument, and the record proves otherwise.

[11] The record demonstrates that Sher's pod acted in furtherance of a common criminal goal and that Sher was or should have been aware of his co-conspirators' actions.  As the District Court explained:  "two of the others in the pod were his brothers. And to suggest that these were strangers to him and therefore he can't be responsible for what was going on because they're all strangers, it's ridiculous." A077.

[12] U.S.S.G. § 2B1.1(b)(10)(C).

[13] *See United States v. Fountain*, 792 F.3d 310, 319 (3d Cir. 2015) (citing *United States v. Fish*, 731 F.3d 277, 280 (3d Cir. 2013)).

[14] *Id.* at 320 n.8 (noting that relevant conduct principles set out in U.S.S.G. § 1B1.3 apply when assessing a sophisticated means enhancement).  But even if we did not consider his co-conspirator's conduct, Sher's own actions are sufficient to support application of the enhancement.  Sher enrolled sixteen people in the scheme, in addition to himself and his wife; participated in the scheme for a year; disguised bribes as "membership bonuses"; and discussed how to conceal the true purpose of the bribes with an enrollee.

who did not plan or originate the crime," but that argument goes to his role in the conspiracy, not his use of sophisticated means.[15]

*Third*, Sher maintains that the District Court unconstitutionally penalized him for exercising his right to a trial because courts did not use aggregate loss amounts or apply a sophisticated means enhancement when sentencing his similarly situated co-conspirators who pleaded guilty.[16] Not so. Sher was not punished for going to trial, but rather chose to forego favorable terms that his co-conspirators received in exchange for pleading guilty. Indeed, the government offered Sher a plea deal that stipulated to a loss amount between $550,000 and $1.5 million. Sher rejected that offer. The District Court was not required to give Sher the benefit of a bargain that he had turned down simply because his co-defendants accepted similar terms.[17]

## IV. Conclusion

For the above reasons, we will affirm the District Court's judgment of sentence.

---

[15] Appellant's Br. 20.

[16] Sher seizes on the District Court's statement that it was bound "as a practical matter" by stipulations in the pleas entered by Sher's co-conspirators. *Id.* at 11, 18–20. However, he fails to show how that statement bears relation to his claim of an unconstitutional trial penalty.

[17] *See Corbitt v. New Jersey*, 439 U.S. 212, 224 (1978) (recognizing the "constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based."); *United States v. Yeje-Cabrera*, 430 F.3d 1, 25 (1st Cir. 2005) ("The fact that the defendant who pleads gets a benefit over those who to go trial and are convicted is a necessary artifact of any plea bargaining regime."); *United States v. Drozdowski*, 313 F.3d 819, 824–25 n.3 (3d Cir. 2002) ("While Drozdowski's co-conspirators pled to lesser amounts of cocaine than Drozdowski was charged with, and some were not assessed additional offense levels for a leadership role in the conspiracy, or for use of a gun, none of this requires a downward departure.").